Fletcher E. Foote v. Simmonds Precision Products Co., Inc., Robert Morris, Paul Brace and Anthony Panella

[613 A.2d 1277]

No. 90-182

Present: **Allen, C.J., Dooley, Morse and Johnson, JJ., and Peck, J. (Ret.), Specially Assigned**

Opinion Filed May 8, 1992

Motion for Reargument Denied June 22, 1992

*Thomas Z. Carlson* of *Langrock, Sperry & Wool,* Burlington, for Plaintiff-Appellee.

*Craig Weatherly* of *Gravel and Shea,* Burlington, for Defendant-Appellant.

**Johnson, J.** The primary issue before us is whether the doctrine of promissory estoppel may modify an employment contract that is otherwise terminable at will. We hold that it may and affirm.

This is an appeal from a jury verdict for plaintiff, Fletcher Foote, against his former employer, Simmonds Precision Products Co., Inc. Plaintiff was discharged from his employment as a computer operator after approximately twenty years of service. Defendant claimed that plaintiff was fired for falsifying his time card. Plaintiff alleged that his discharge was the result of

his efforts to use the grievance procedure published in the company's employee handbook. The procedure assured employees that "[i]f you follow these steps, you cannot be criticized or penalized in any way." Plaintiff claimed that he relied on this promise of nonretaliation. Defendant pointed to another passage in the employee handbook, which stated that "[t]he employment relationship between the company and you may be terminated by either party at any time." On that basis, it contended that plaintiff was an at-will employee and it was entitled to discharge him.

The evidence showed that, prior to his use of the grievance procedure, plaintiff had an excellent work history as a senior computer operator at Simmonds. His periodic evaluations were consistently very good to outstanding. In the late summer of 1986, he and other operators became concerned about the hiring of a supervisor whom they considered unqualified, and about changes in pay and benefit practices. Although plaintiff wanted to pursue these problems through defendant's grievance process, he was concerned about losing his job. He consulted an employee relations manager about how to pursue grievances within the company's policy. The manager referred him to the "Problem-Solving Procedure" in the employee handbook, containing the language that employees could not be criticized or penalized in any way if they complied with the procedures. Defendant's personnel manager testified that the company intended that employees rely on the statement.

Plaintiff attempted to follow the procedure, but was met with increasing irritation by his supervisors. In December 1986, plaintiff suffered a poor work evaluation, which he claimed was unjustified. Three months later, he was discharged. According to defendant, plaintiff recorded hours on his time card that he had not actually worked. Plaintiff contended he was relying on a policy that allowed computer operators to leave before the end of their shifts. Defendant claimed it had discontinued the policy and specifically notified plaintiff.

The jury believed plaintiff's side of the story. Although plaintiff proceeded on express and implied contract theories, as well as promissory estoppel, the jury based its verdict solely on promissory estoppel. Its verdict was reflected in a series of interrogatories. The relevant interrogatories and answers were:

1. At the time of termination of employment of Fletcher Foote, was there an employment contract that could be terminated at will by the employer? *Yes.*

2. At the time of termination of employment, was there an employment contract that required good cause for termination of employment by the employer? *No.*

3. Did Simmonds Precision Products Co., Inc. breach a contract of employment when Fletcher Foote was terminated from employment? *No.*

4. Was Fletcher Foote terminated from employment by Simmonds Precision Products Co., Inc. for good cause? *No.*

5. Were Fletcher Foote's grievances the real reason leading to termination *and* the real reason for termination was not any false time card *and* the employer should be estopped from saying he was properly terminated? *Yes.*

7. What damages do you find, if any, for breach of contract? *$150,000.00.*

After the jury returned its verdict, an additional interrogatory was submitted and answered, as follows:

Is the damage amount of $150,000.00 for damages proximately caused by the promissory estoppel answer of question #5. *Yes.*

On appeal, defendant argues that the trial court erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict. Although variously phrased, defendant's arguments boil down to three—promissory estoppel should not have been charged as an independent cause of action that may modify an at-will employment contract, the jury's answers to the interrogatories are legally inconsistent, and alternatively, that the evidence was insufficient to prove the elements of promissory estoppel.[1]

■■ The legal question raised by motions for directed verdict and for judgment notwithstanding the verdict under

---

[1] Defendant also assigned as error the trial court's charge on the elements of promissory estoppel, claiming the charge was confusing and misleading; however, defendant failed to preserve an objection on this ground, and indeed, the transcript reveals defendant's agreement with the charge as given.

V.R.C.P. 50 is the same. The question is whether the result reached by the jury is sound in law on the evidence produced. *Kinzer v. Degler Corp.*, 145 Vt. 410, 412, 491 A.2d 1017, 1018 (1985). In reviewing the denial of these motions, we view the evidence in the light most favorable to the nonmoving party and exclude the effect of any modifying evidence. *Center v. Mad River Corp.*, 151 Vt. 408, 413, 561 A.2d 90, 93 (1989). If any evidence fairly or reasonably supported a lawful theory of the plaintiff, then the trial court acted properly in denying the motions. *Id.*

I.

We turn first to defendant's argument that at-will employment and the doctrine of promissory estoppel are mutually exclusive, and that the court's instructions on these issues produced a verdict that is legally inconsistent.

As we stated in *Sherman v. Rutland Hospital*, 146 Vt. 204, 207, 500 A.2d 230, 232 (1985), an employment contract for an indefinite term is an "at-will" agreement, terminable at any time, for any reason. However, this is simply a rule of contract construction. *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 596–97, 292 N.W.2d 880, 884 (1980). The common law presumes the existence of an at-will provision when employment is for an indefinite term. It is a presumption that may, like any other, be overcome by evidence to the contrary. *Pugh v. See's Candies, Inc.*, 116 Cal. App. 3d 311, 324, 171 Cal. Rptr. 917, 924 (1981). The rule imposes no substantive limitation on the right of contracting parties to modify terms of their arrangement or to specify other terms that supersede the terminable-at-will provision. *Sherman*, 146 Vt. at 207, 500 A.2d at 232; *Helle v. Landmark, Inc.*, 15 Ohio App. 3d 1, 7, 472 N.E.2d 765, 772 (1984).

Aside from bilateral modifications as in *Sherman*, at-will employment contracts may be modified by statute or common law. Federal and state laws prohibiting discrimination on the basis of race, sex, religion, national origin, handicap and age are examples of statutory modifications that alter every at-will contract in Vermont. 42 U.S.C. § 2000e-2(a); 21 V.S.A. § 495(a). Common law public policy exceptions to the at-will doctrine

have also been recognized in this state. *Payne v. Rozendaal,* 147 Vt. 488, 491, 520 A.2d 586, 588 (1986); *Jones v. Keogh,* 137 Vt. 562, 564, 409 A.2d 581, 582 (1979).

A number of courts have held that an employer may unilaterally modify an at-will contract, by publishing a company handbook or manual on which it intends employees to rely. See *Thompson v. St. Regis Paper Co.,* 102 Wash. 2d 219, 229–30, 685 P.2d 1081, 1087–88 (1984) (employer's unilateral objective manifestation of intent that employee will remain on job creates expectation, and obligation of treatment in accord with written promises); *Toussaint,* 408 Mich. at 619, 292 N.W.2d at 895 (employer may not treat announced promise to dismiss for cause only as illusory); *Continental Air Lines v. Keenan,* 731 P.2d 708, 711–12 (Colo. 1987) (at-will employee may be able to enforce termination procedures in employee manual under theories of unilateral contract or promissory estoppel).

■ ■ Similarly, promissory estoppel may modify an at-will employment relationship and provide a remedy for wrongful discharge. *Mers v. Dispatch Printing Co.,* 19 Ohio St. 3d 100, 105, 483 N.E.2d 150, 155 (1985); *Rognlien v. Carter,* 443 N.W.2d 217, 220 (Minn. Ct. App. 1989). Contrary to defendant's assertion, it is an independent cause of action, and may be used affirmatively, if the elements are present. See *Larose v. Agway, Inc.,* 147 Vt. 1, 3–4, 508 A.2d 1364, 1366 (1986) (insufficient evidence on element of reliance deprived discharged employee of promissory estoppel claim).

Nothing about the at-will doctrine suggests that it does not coexist with numerous modifications and exceptions imposed by law, including the law of promissory estoppel, depending on the facts of a particular case. Whether or not these modifications technically remove the employment contract from the at-will realm, as defendant argues, is form over substance. Even with modifications, employees for an indefinite term are still considered at-will employees, who may be discharged for any number of reasons not prohibited by the modifications.

In this case, the jury's answers to the interrogatories showed that they believed the company's right to discharge was modified in the at-will employment contract in one respect—plaintiff could not be discharged for the pursuit of grievances in accordance with the handbook. Because it determined that he

was discharged for that reason, the jury found liability against the company. That the plaintiff was otherwise an at-will employee, and legally could have been discharged for any other reason not in violation of statute or public policy, does not mean that the verdict is inconsistent. In fact, the employer advanced such a reason—that plaintiff had falsified his time cards—but the jury did not believe it.

## II.

Defendant makes a more direct attack, grounded on the same legal theory, asserting the legal inconsistency of the answers to the interrogatories. It contends that, once the jury found that plaintiff was an at-will employee (interrogatory 1), and that defendant did not breach an employment agreement (interrogatory 3), the jury could not find defendant liable for discharging plaintiff, no matter what the reason. According to defendant, the jury's deliberations should have ended after it made the at-will finding.

■ A party has an obligation to object to the portions of the charge or interrogatories it challenges, "'stating distinctly the matter objected to and the grounds of the objection.'" *Hartnett v. Union Mut. Fire Ins.*, 153 Vt. 152, 160, 569 A.2d 486, 490 (1989) (quoting V.R.C.P. 51(b)). Thus, errors in jury interrogatories can be raised before this Court only if the party claiming error seasonably objects before the trial court. *Silva v. Stevens*, 156 Vt. 94, 110, 589 A.2d 852, 861 (1991).

■ The record reveals no objection by defendant to the interrogatories as written and submitted. The interrogatories themselves, as set forth above, are devoid of instructions that would limit the jury's responses to the questions in any way. The court instructed that there were three claims in the case—contract, estoppel, and tort. As already discussed, it was proper for the court to charge the jury that promissory estoppel is an independent cause of action. The court instructed that if the jury found defendant not liable on the theories of contract and estoppel, it need not go any further, and that it could continue with deliberations on damages only if it said yes to contract or estoppel. Again, defendant did not object to this oral instruc-

tion on how the jury was to proceed.[2] The only objection to the inconsistency of the interrogatories on the ground defendant now claims—that answering all the interrogatories as the jury did produced inconsistent results—came after the jury rendered its verdict. This was too late, however, and defendant must take the answers as given.

## III.

Defendant argues, alternatively, that there was insufficient evidence for the jury to make a finding of promissory estoppel.

The doctrine of promissory estoppel, as recognized in Vermont, is set forth in the Restatement (Second) of Contracts § 90(1) (1981).

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

See *Larose*, 147 Vt. at 3, 508 A.2d at 1366; *Overlock v. Central Vermont Public Service Corp.*, 126 Vt. 549, 552, 237 A.2d 356, 358 (1967).

There was sufficient evidence on each element. The promise in the employee handbook relating to "Problem Solving Procedures" within the company stated, "If you follow these steps, you cannot be criticized or penalized in any way." The maker of such a statement in an employee handbook should expect action or forbearance on the part of the promisee as a result of the statement. Indeed, defendant's personnel manager testified that the company intended that employees rely on the statement. Even without that testimony, the entire tone of the "Problem Solving Procedure" indicates defendant's intention to create a working environment in which its employees could ex-

---

[2] Defendant did preserve its objection to the charge on promissory estoppel insofar as it was charged as a separate and independent cause of action, but it did not ask the court for any instructions that would have precluded the jury from answering subsequent questions after answering the at-will question in the affirmative.

pect to be treated fairly in the pursuit of grievances.[3] See *Toussaint*, 408 Mich. at 613, 292 N.W.2d at 892 (employer's establishment of fair policies enhances the employment relationship to the employer's benefit, and creates an obligation to follow them). Defendant does not now argue that it did not intend reliance; instead, it contends plaintiff exceeded the bounds of what defendant expected its employees to do and became a pest. But, the jury implicitly rejected that view when it found for plaintiff on the estoppel theory. There is no basis for overturning the jury's determination.

*Affirmed.*

---

[3] The Problem Solving Procedure begins with the following statement: "We make a constant and conscientious effort to see that all our employees are treated with consideration and fairness. We want them to be satisfied in their relations with us and with each other. So we have established our Problem Solving Procedure as a system of communication between employees and management."