**Adolph V. MECIER**

v.

**Shaun BRANON and General Electric Co.**

**Civil No. 1:96–CV–17.**

United States District Court, D. Vermont.

Feb. 20, 1996.

Leslie C. Pratt, Montpelier, VT, for Plaintiff.

Robert B. Hemley, Burlington, VT, for Defendants.

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### (Paper 14)

MURTHA, Chief Judge.

Plaintiff Adolph Mecier brought an action in Rutland County Superior Court against defendants General Electric Corporation (hereinafter "GE") and Shaun Branon. Plaintiff's claims against GE are for breach of contract, promissory estoppel, and violation of Vermont's Fair Employment Practice Act (hereinafter "FEPA"), 21 V.S.A. §§ 495–495g. Plaintiff's claim against defendant Branon is for the intentional infliction of emotional distress.

Defendants have moved for summary judgment of these claims. *See* Defendant's Motion for Summary Judgment (paper 14). Plaintiff has consented to the entry of summary judgment dismissing defendant Branon. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (paper 15) (hereinafter "Plaintiff's Memo.") at 1. As to the remaining claims for breach of contract, promissory estoppel, and violation of FEPA, defendant's motion for summary judgment is GRANTED in part and DENIED in part.

### I. BACKGROUND

A motion for summary judgment must be granted if, through examination of the moving party's "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," the court finds "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Only disputes over those facts that might affect the outcome of the suit under governing law preclude entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

As the party moving for summary judgment, GE bears the burden of informing this Court of the basis for its motion and of identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. *See Latimer v. Smithkline and French Laboratories,* 919 F.2d 301, 303 (5th Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In determining whether the movant has met its burden, the Court must resolve all ambiguities in favor of the non-moving party. *See Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988).

Because GE's motion for summary judgment is supported by affidavits and documentary evidence, plaintiff Mecier must set forth specific facts showing there is a genuine, material issue for trial. *See King Service, Inc. v. Gulf Oil Corp.,* 834 F.2d 290, 295 (2d Cir.1987). Plaintiff must present enough evidence to support a verdict in his favor and cannot defeat defendant's motion by present-

ing a metaphysical doubt, conjecture, or surmise concerning the facts. *See Matsushita Elec. Ind. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Borthwick v. First Georgetown Securities, Inc.,* 892 F.2d 178, 181 (2d Cir.1989).

For the purpose of deciding the instant motion, the Court finds the following facts: Plaintiff Adolph Mecier was hired by GE in 1980 to work in its Rutland plant. *See* Deposition of Adolph Mecier (Exhibit 1 attached to paper 14) (Exhibit A attached to paper 15) (hereinafter "Plaintiff's Dep.") at 9. When GE hired Mecier it gave him an employee handbook which sets out GE's policies for its employees. *See* Plaintiff's Dep. at 9; Employee Handbook (Exhibit 3 attached to paper 14).

In February, 1992, plaintiff took a medical leave due to a back problem. *See* Complaint (paper 3) at ¶ 4. During his leave, plaintiff reported to GE's staff nurse Karen Ellison about his medical condition. *See* Plaintiff's Dep. at 19–20.

Some time prior to February 1993, Ellison informed Mecier his leave was approaching one year, and he could lose his job should he remain out of work beyond that time. *See* Plaintiff's Dep. at 19–23, 62. Plaintiff claims this was the first time he became aware of GE's policy that a workers' "continuity of service" is broken if he or she is absent from work for more than one year without a leave of absence. *See id.* at 19, 23.

Nurse Ellison told Mecier to speak with his foreman. *See id.* at 19, 23, 62. In response to Mecier's inquiries, foreman Jim Massey said he would "check into it." *Id.* at 63.

Mecier also spoke to his shop manager, Pete Muscatello. Plaintiff states: "I told him just what I told Jim Massey, that I was coming up to a year out of work, and I was wondering if there was going to be any problems in my coming back to work." *Id.* at 65. Muscatello asked how many years plaintiff "had in" with the company, to which Mecier replied "twelve." *Id.* Plaintiff claims Muscatello then stated: "I don't see any problem, I don't see no problem at all" and said "don't

worry about it, your job will be secure." *Id.* at 65, 66.

Plaintiff states Muscatello told him GE subtracts the amount of days a worker is out beyond one year from the worker's in-service time. *See id.* at 65. Other than affecting pension and severance, plaintiff claims the length of his in-service time was important to him because he was aware the company was laying off workers with five or six years of service with the company. *See id.* at 66.

Plaintiff also claims he told Muscatello he hoped to return to work in March. *See id.* Plaintiff inquired about working half-days, but Muscatello said "there's not much work in our area right now, just sit back, take your time, let your back recuperate, I want your back a hundred percent instead of hurting yourself and having to go back out." *Id.*

In April 1993, plaintiff met with Jim Massey to inquire as to whether his job remained safe after recent layoffs. Massey stated "if Pete [Muscatello] said your job was safe, then I guess it would be safe." *Id.* at 54. Plaintiff claims he was ready to return to work at this point but could not get clearance from his doctor. *See id.*

On May 5, 1993, plaintiff reported to work with a medical release from physician Leon Grobler. *See id.* at 58; Consultation Summary (Exhibit 7 attached to paper 14). By May, however, GE was in the midst of layoffs of up to 500 employees which had significantly reduced the size of the area in which Mr. Mecier worked. *See* Deposition of Shaun M. Branon (Exhibit 2 attached to paper 14) (Exhibit 3 attached to paper 15) at 26, 33.

When the company is experiencing layoffs, GE has a policy of refusing to return employees to work who have been absent for more than one year. *See id.* at 33–34. Accordingly, Mr. Branon informed plaintiff his services were no longer needed at the plant. *See* Plaintiff's Dep. at 68.

## II. DISCUSSION

### A. Breach of Contract

■ In Vermont, an employment contract without a fixed, definite term is terminable at-will at any time and for any reason. *See*

*Foote v. Simmonds Precision Products Co., Inc.,* 158 Vt. 566, 570, 613 A.2d 1277, 1279 (1992); *Taylor v. National Life Ins. Co.,* 161 Vt. 457, 462, 652 A.2d 466, 470 (1993). However, this rule of contract construction may be overcome by evidence that a particular employment contract is, in fact, terminable only for cause. *See Foote,* 158 Vt. at 570, 613 A.2d at 1279.

> The Vermont Supreme Court has stated:

> [P]ersonnel manual provisions inconsistent with an at-will relationship may be used as evidence that the contract of employment requires good cause for termination despite the fact that the manual was not part of the initial employment agreement.

*Taylor,* 161 Vt. at 464, 652 A.2d at 471 (citations omitted). In deciding at what point an at-will contract is modified, the Court noted:

> It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation."

*Taylor,* 161 Vt. at 464–65, 652 A.2d at 471 (quoting *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880, 892 (1980)).

In *Farnum v. Brattleboro Retreat, Inc.,* —— Vt. ——, ——–——, 671 A.2d 1249, 1253–55 (1995), the Vermont Supreme Court construed the effects of two handbooks on an at-will employment contract. The handbooks contained a commitment to a progressive disciplinary system and provided "examples of some, but not all, conduct which may subject [the employee] to disciplinary action." The Court found the whether the handbooks created an implied contract was a jury question because "the provisions contained therein send mixed messages regarding whether employees can be discharged without cause."

■ Employee manuals, however, are not automatically binding agreements. *See Ross v. Times Mirror, Inc.,* —— Vt. ——, ——–——, 665 A.2d 580, 584 (1995). Rather,

"whether a particular policy is meant to be a unilateral offer is an issue of proof." *Id.* "An employer may not always be bound by statements if it conspicuously and effectively states that the policy is not intended to be a part of the employment relationship." *Id.* (citing *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081, 1088 (1984)).

■ Defendant indicates the first page of the Handbook contains the following disclaimer:

> This handbook is intended for your use as a guide to GE–Rutland policies and practices, which may be subject to change or interpretation. It is not intended as a contract or agreement for employment.

Employee Handbook at i. This disclaimer indicates GE's intent not to bind itself by the policies set forth in the manual.

■ However, disclaimers must be evaluated in the context of all the other provisions in a handbook and any other circumstances bearing on the status of an employment agreement. *See Farnum,* —— Vt. at ——, 671 A.2d at 1254 (construing handbooks stating "the Handbook does not constitute a contract of employment," and "all terminations are made at [employer's] discretion.") "Without such a principle, an employer could have it both ways—enjoying the morale enhancing benefits of fair procedure most of the time but relying on a handbook disclaimer whenever it chose to jettison its procedures in a particular case." *Ross,* —— Vt. at ——, 665 A.2d at 583. Thus, the above-noted disclaimer does not alone resolve whether GE's Employment Handbook altered its contract with the plaintiff.

Review of the materials submitted by the parties suggests the presence of disputed issues of material fact. For example, defendant states: "Mr. Mecier cites to no policy or Handbook provision that is inconsistent with an at-will relationship or with GE's policy of administratively terminating employees absent from work for more than one year." Defendant's Motion at 12. Defendant also states: "The uncontroverted evidence demonstrates that Mr. Mecier was terminated after he had been on medical leave for more than one year, and that this is in accordance

with the policy practiced by GE and not inconsistent with any provision set forth in the Handbook." *Id.* at 13.

Plaintiff, however, points out the beginning of the Employee Handbook contains the following provision:

> Personnel practices are the ground rules which make it possible to do the best job we are capable of, with the full knowledge and confidence that we will be treated fairly and equitably.

Employee Handbook at 10. This language implies the policies set forth in the Handbook are "rules" which an employee must obey in order to receive equitable treatment from GE. The Court believes such language may create the type of situation referred to in *Taylor* as "instinct with an obligation." 161 Vt. at 464–65, 652 A.2d at 471 (quoting *Toussaint,* 292 N.W.2d at 892). Such a situation is one where an employee might feel contractually bound by an employee manual even though it is not officially part of his or her contract.

Plaintiff also notes the Handbook contains an extensive list of actions that may result in a worker's discharge which does not include medical absence from the workplace for more than one year. *See* Employee Handbook at 30–31. Such written commitment to a system of discipline may be sufficient for a jury to find an employment contract restricted an *employer* to terminating an employee for cause. *See Farnum,* — Vt. at ——, 671 A.2d at 1254; *Taylor,* 161 Vt. at 465, 652 A.2d at 471.

In light of the foregoing analysis, the Court finds there are material issues of fact regarding whether plaintiff was an at-will employee. Accordingly, defendant's motion for summary judgment of plaintiff's breach of contract claim is denied.

### B. *Promissory Estoppel*

■ "Promissory estoppel may modify an at-will employment relationship and provide a remedy for wrongful discharge." *See Foote,* 158 Vt. at 571, 613 A.2d at 1280. The Vermont Supreme Court has adhered to the elements of promissory estoppel as set forth

in the Restatement (Second) of Contracts § 90(1):

> "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee … and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

(quoted in *Taylor,* 161 Vt. at 471–72, 652 A.2d at 475; *Foote,* 158 Vt. at 574, 613 A.2d at 1281).

■ The elements of promissory estoppel "specifically require that the promise induce the reliance provided by the promise." *Stacy v. Merchants Bank,* 144 Vt. 515, 521, 482 A.2d 61, 65 (1984) (citing 1A A. Corbin, Corbin on Contracts § 196, at 201 (1963) ("[T]he promise comes first and induces the subsequent action in reliance; that subsequent action is an effect and not a cause of the promise.")). This is known as the theory of detrimental reliance. *Merex A.G. v. Fairchild Weston Systems, Inc.,* 29 F.3d 821, 824 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 737, 130 L.Ed.2d 639 (1995).

■ The Court finds plaintiff did not rely to his detriment on Muscatello's promise that "his job will be secure." Plaintiff's Dep. at 66. Mecier admits he did not have a medical release from his doctor until May 5, 1993, the day he returned to work. *See* Plaintiff's Dep. at 58; Consultation Summary (Exhibit 7 attached to paper 14). Indeed, Mecier *wanted* to return to work before May but knew he could not without medical clearance. *See* Plaintiff's Dep. at 54. Thus, the delay of Doctor Grobler's release rather than reliance on Muscatello's assurances induced plaintiff's absence from work beyond one year. Because plaintiff cites no facts to place this issue in dispute, defendant's motion for summary judgment is GRANTED as to plaintiff's promissory estoppel claim.

### C. *FEPA*

■ According to FEPA, "[i]t shall be unlawful employment practice … [f]or any employer … to discriminate … against a qualified handicapped individual." 21 V.S.A. § 495. Under the Act, a "qualified handicapped individual" means "an individual with

a handicap who is capable of performing the essential functions of the job or jobs for which he is being considered with reasonable accommodation to his handicap." 21 V.S.A. § 495d(6).

Defendant argues "GE has demonstrated a legitimate nondiscriminatory reason for its actions in this matter." Defendant's Motion at 20. As previously pointed out, GE has a policy of never returning employees who are absent for more than one year when the company is experiencing layoffs. *See* Deposition of Shaun M. Branon at 33–34.

However, disputed issues of fact exist as to whether the contract between the parties was modified. In light of this fact, the Court cannot assess the compatibility of the afore-stated policy with the employment contract at issue. Thus, it is inappropriate to grant defendant's motion to dismiss plaintiff's FEPA claim at this time.

### III. CONCLUSION

In light of the foregoing analysis, defendant's motion for summary judgment on plaintiff's claims for breach of contract and violation of FEPA is DENIED. Defendant's motion for summary judgment of plaintiff's promissory estoppel claim is GRANTED.

SO ORDERED.