Deborah L. LORD, Plaintiff Below, Appellant,

v.

Linda R. SOUDER and Peninsula United Methodist Homes, Inc., Defendants Below, Appellees.

No. 58, 1999.

Supreme Court of Delaware.

Submitted: Dec. 14, 1999.

Decided: March 24, 2000.

396 ■

Jeremy W. Homer, Parkowski, Noble & Guerke, P.A., Dover, Delaware, for Appellant.

Barry M. Willoughby, and William W. Bowser (argued), Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, for Appellees.

Before WALSH, and BERGER, Justices, and LAMB, Vice Chancellor *.

WALSH, Justice:

This is an appeal from the Superior Court's dismissal of Plaintiff's complaint pursuant to Superior Court Rule 12(b)(6) for failure to state a claim. The complaint sought damages for termination of employment on separate claims of promissory estoppel, wrongful discharge, fraud and *prima facie* tort. We conclude that the Superior Court's dismissal of Plaintiff's promissory estoppel and fraud claims was in error. Accordingly, we affirm in part, reverse in part and remand for further proceedings.

**I**

In conformity with Superior Court Civil Rule 12(b)(6), the facts set forth herein have been drawn from the face of the complaint. Prior to March 6, 1997, Plaintiff, Deborah L. Lord ("Lord"), was employed by the Methodist Manor House ("Manor House") as an administrative secretary. Manor House, a retirement-nursing facility, is owned and operated by Peninsula United Methodist Homes, Inc. ("Peninsula"), a Delaware corporation.

At some point, Lord became aware that Linda R. Souder ("Souder"), the Executive

* Appointed pursuant to Art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4.

Director of Manor House, had been engaging in various illegal and/or improper practices. Specifically, Lord claims to have learned that Souder misappropriated the property of deceased residents, stole funds from the Manor House petty cash drawer, charged personal long-distance telephone calls to Manor House and utilized other Manor House resources, including an automobile and food service, for personal benefit.

Subsequently, Phillip D. Hagermann ("Hagermann"), Peninsula's Vice–President of Human Resources, encouraged Lord to explain to him what she knew about improper conduct by Souder.[1] Hagermann also requested that Lord provide him with the names of any other employees who might have information regarding Souder's conduct. After seeking and obtaining assurances that if she disclosed information relating to Souder's improper practices she would be protected from any reprisals, Lord disclosed to Hagermann the information she had learned, as well as the names of co-workers who were also aware of Souder's alleged misconduct. Lord contends that, despite these assurances, neither Hagermann nor anyone else acting on behalf of Peninsula had a policy or practice of protecting an informant such as Lord from reprisals and that Hagermann's assurances, thus, recklessly placed her in jeopardy.

In response to Lord's information, Richard C. Stazesky, Peninsula's Chief Executive Officer, personally interviewed the other employees named by Lord as having knowledge of Souder's improper practices. Peninsula eventually determined that Souder had, in fact, engaged in improper conduct. As a result, Souder was reprimanded and directed to cease such practices.

Lord alleges that Souder soon learned, or began to suspect, that Lord had provided information regarding Souder's improper practices to upper management. Souder's knowledge of Lord's role, Lord contends, resulted from Peninsula's reckless dissemination of the information provided to Hagermann. As a result, Lord claims, Souder became very critical of Lord's work. Soon thereafter, Peninsula terminated Lord's employment with Manor House at the behest of Souder.

Lord was informed that she was being discharged because her position was being eliminated. Lord, however, disputes this explanation and contends that she was discharged for providing information to Peninsula regarding Souder's misconduct despite Hagermann's assurances that there would be no reprisals. Although Lord does not dispute the fact that the terms of her original employment render her an employee at-will, she claims that at all relevant times she performed her job responsibilities in a satisfactory manner.

On October 7, 1997, Lord filed a six-count complaint in the Superior Court stating the following causes of action against Souder and Peninsula (collectively "Defendants") arising out of her termination from Manor House: promissory estoppel; wrongful discharge; misrepresentation; *prima facie* tort; intentional infliction of emotional harm; and malicious and fraudulent termination. Defendants filed a motion to dismiss the complaint pursuant to Superior Court Rule 12(b)(6). The Superior Court separately analyzed each count of the complaint and concluded that none of Lord's claims overcame her status as an employee at-will subject to discharge without explanation. This appeal followed.[2]

## II

This Court reviews *de novo* the Superior Court's dismissal of the complaint

---

1. The complaint does not make clear whether Hagermann initially contacted Lord or Lord sought out Hagermann.

2. Lord has not appealed the Superior Court's dismissal of her claims for intentional infliction of emotional harm and for malicious and fraudulent termination.

for failure to state a claim. *See Solomon v. Pathe Communications Corp.*, Del. Supr., 672 A.2d 35, 38 (1996). Dismissal under Superior Court Rule 12(b)(6) is appropriate only where it appears with reasonable certainty that Lord would be unable to prevail on any set of facts inferable from the complaint. *See Ramunno v. Cawley*, Del.Supr., 705 A.2d 1029, 1034 (1998). Pursuant to such review, this Court accepts the well-pleaded allegations of the complaint as true. *See In re Tri-Star Pictures, Inc. Litig.*, Del.Supr., 634 A.2d 319, 326 (1993). Where allegations are merely conclusory, however, (*i.e.*, without specific allegations of fact to support them) they may be deemed insufficient to withstand a motion to dismiss. *See id.*

### III

We first address Lord's claim of promissory estoppel. Despite the general principle that an employee at-will can be terminated for any reason, with or without cause and at any time, *see Merrill v. Crothall–American, Inc.*, Del.Supr., 606 A.2d 96, 103 (1992), several Delaware decisions have recognized the theory of promissory estoppel as a basis of recovery by an at-will employee for wrongful discharge. *See Konitzer v. Carpenter*, Del.Super., C.A. No. 92C–07–067, 1993 WL 562194, at *6, Cooch, J. (December 29, 1993); *Keating v. Board of Educ. of the Appoquinimink Sch. Dist.*, Del. Ch., C.A. No. 12589, 1993 WL 460527, at *4, Jacobs, V.C. (November 3, 1993), *aff'd*, Del.Supr., 650 A.2d 1305 (1994) (TABLE); *Crisco v. Board of Educ. of the Indian River Sch. Dist.*, Del. Ch., C.A. No. 9282, 1988 WL 90821, at *3, Berger, V.C. (August 29, 1988); *Reeder v. Sanford Sch., Inc.*, Del.Super., 397 A.2d 139, 141–42 (1979).[3] Peninsula seeks to distinguish these holdings because all in-

volved pre-hire rather than post-hire promises by the employer. Pre-hire promises, Peninsula argues, even accompanied by detrimental reliance, do not erode the employment at-will doctrine because the at-will presumption has not yet attached to the relationship. Conversely, a post-hire promise not to discharge occurs after the at-will presumption has attached to the relationship. Permitting promissory estoppel claims in the case of a post-hire promise, Peninsula contends, would effectively eliminate the employment at-will presumption by permitting employees to simply allege that post-hire statements or conduct changed the employment relationship.

■ We are not persuaded by this policy argument. The purpose of the promissory estoppel doctrine is to prevent injustice. *See Chrysler Corp. v. Quimby*, Del.Supr., 144 A.2d 123, 133 (1958). Other jurisdictions have applied promissory estoppel to enforce post-hire promises upon which at-will employees have relied. *See Foote v. Simmonds Precision Prod. Co.*, 158 Vt. 566, 613 A.2d 1277, 1281 (1992); *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150, 155 (1985). Additionally, in *Fini v. Remington Arms Co.*, D. Del., C.A. No. 97–12–SLR, 1998 WL 299358, at *10, Robinson, J. (May 27, 1998), the Federal District Court for the District of Delaware, interpreting Delaware law, drew no distinction between pre-hire and post-hire promises in denying an employer's motion for summary judgment on a discharged employee's claim for promissory estoppel based on a post-hire promise. We find Peninsula's proposed distinction between pre-hire and post-hire promises to be arbitrary and contrary to the fundamental purpose of the promissory estoppel doctrine. Accordingly, we con-

---

**3.** One Delaware court has held differently. *See Gaines v. Wilmington Trust Co.*, Del.Super., C.A. No. 90C–MR–135, 1991 WL 113613, at *3, Del Pesco, J. (June 3, 1991), *aff'd on other grounds*, Del.Supr., No. 250, 1991, 608 A.2d 727, 1991 WL 316954, Hartnett, V.C. (sitting by designation pursuant to

Del. Const. art. IV § 12) (Dec. 27, 1991) ("The plaintiff claims that she detrimentally relied on representations that she would not be terminated without just cause. Such allegations do not state a cause of action for an at-will employee.").

clude that at-will employment status does not preclude, *per se*, the assertion of a promissory estoppel claim even if that claim is based on post-hire statements or conduct by an employer.

■ In order to establish a claim for promissory estoppel, a plaintiff must show by clear and convincing evidence that: (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise. *See Keating*, 1993 WL 460527, at *4.

In the present case, the Superior Court held that Lord was unable to satisfy the elements required for a promissory estoppel claim. This holding was based on that court's findings that: (i) the alleged assurances were too "amorphous" to be enforced; (ii) Lord's alleged reliance was not reasonable due to the nature of at-will employment and the lack of a specific promise which clearly modified her employment status; (iii) it is impossible to determine the extent of Lord's injury or calculate damages because she could have been fired immediately for any other reason or no reason at all; and (iv) application of promissory estoppel on the basis of the facts in this case would be against public policy because it would create an environment where "investigations into employee conduct will turn into employment status negotiations." We share a different view of the validity of promissory estoppel under the facts alleged in this case.

■ First, Hagermann's alleged assurances to Lord cannot be construed as amorphous. The complaint states that Lord "disclosed the information related to Souder's improper practices requested by Hagermann, after Lord sought and obtained from Hagermann assurances that if she disclosed such information, she would be protected from any reprisals by Soud-

er." (Compl. at 3, ¶ 17). This language is sufficiently definite to withstand a motion to dismiss.

■ Second, the fact that Hagermann's assurances did not alter the at-will status of Lord's employment does not automatically render Lord's reliance on that promise unreasonable. As the Vermont Supreme Court noted in *Foote*, 613 A.2d at 1280:

> Nothing about the at-will doctrine suggests that it does not coexist with numerous modifications and exceptions imposed by law, including the law of promissory estoppel, depending upon the facts of a particular case. Whether or not these modifications technically remove the employment contract from the at-will realm, as defendant argues, is form over substance. Even with modifications, employees for an indefinite term are still considered at-will employees, who may be discharged for any number of reasons not prohibited by the modifications.

Further, one can reasonably infer from the facts of the complaint that Hagermann, in making the assurances to Lord, was acting in his capacity as Peninsula's Vice–President of Human Resources. Hagermann was reasonably viewed as an authority figure upon whom Lord could rely to insure that Peninsula, her employer, would prevent Souder from making any reprisals against her. Presumably, Lord's information was of value to Peninsula, which had an interest in protecting its patients and its own resources from improper and arguably illegal practices by its employees.

■ We also view the complaint as pleading facts sufficient to satisfy the "injury" requirement for promissory estoppel. Peninsula argues that it is impossible to calculate damages because Lord could have been fired immediately for any other reason or no reason. That argument has no more force with respect to the application of the promissory estoppel than any other exception to the employment at-will doctrine (*i.e.*, statutorily prohibited dis-

crimination or breach of the implied duty of good faith and fair dealing) that give rise to a claim for damages. *See E.I. DuPont de Nemours and Co. v. Pressman,* Del.Supr., 679 A.2d 436, 444 (1996). Although quantifying damages in cases involving the wrongful discharge of an at-will employee is problematic, at this juncture, a plaintiff is not required to prove damages. It is sufficient to claim that the discharge would not have otherwise occurred when it did and that the plaintiff incurred financial detriment as a result.

Lastly, we believe public policy more heavily favors Lord's rather than Peninsula's position. This Court does not share the Superior Court's concern that the application of the promissory estoppel doctrine on the facts in this case would create an environment where "investigations into employee conduct will turn into employment status negotiations." The principal policy reason for the application of the doctrine to the employment at-will context is the prevention of unfairness. *See Quimby,* 144 A.2d at 133. That interest is served here by applying promissory estoppel under the standards which attend that doctrine under Delaware law.

■ We recognize that the application of promissory estoppel is somewhat problematic in this case. Promissory estoppel is more accurately viewed as a consideration substitute for promises which are reasonably relied upon, but which would otherwise not be enforceable. *See Corbin on Contracts,* § 8.12, p. 101. But the Superior Court did not reject the application of promissory estoppel on that ground and the appellees have not argued that deficiency in this appeal. In any event, it is doubtful if Lord's agreement to disclose wrongdoing could form a valid consideration, or promise, because as the Superior Court noted "plaintiff could have been fired for not talking." Although the Superior Court found Hagermann's promise "amorphous," a finding we reject, we view Lord's promise to disclose what she already had a duty to report as not rising to the level of an enforceable consideration.

■ In conclusion, we find that Lord's complaint alleges that Peninsula made a promise to Lord in the expectation to induce her action, that Lord reasonably relied on the promise and that such promise is binding because injustice can be avoided only by its enforcement. Accordingly, we view the complaint as setting forth sufficient allegations to support a cause of action for promissory estoppel.

## IV

We next consider Lord's claim for wrongful discharge. As already noted, the common law rule regarding at-will employment authorizes the discharge of an employee at any time without cause. *See Merrill,* 606 A.2d at 103. Delaware law has evolved, however, through recognition of a limited implied covenant of good faith and fair dealing as an exception to the harshness of the employment at-will doctrine. *See id.* at 101. In *Pressman,* this Court catalogued the actionable claims into four categories: (i) where the termination violated public policy; (ii) where the employer misrepresented an important fact and the employee relied "thereon either to accept a new position or remain in a present one"; (iii) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and (iv) where the employer falsified or manipulated employment records to create fictitious grounds for termination. 679 A.2d at 442–44.

Lord contends that Peninsula's termination of her employment with Manor House constituted a violation of the public policy exception under the covenant of good faith and fair dealing. Lord seems to concede that her claim does not fit within any of the remaining categories but argues that *Pressman's* categories are merely examples of actionable claims and not exclusive. In rejecting this argument,

the Superior Court ruled that: (i) the four categories enumerated in *Pressman* were "narrowly defined" and exclusive and (ii) the conduct alleged in the present case could fall only within the public policy category—a claim the Superior Court rejected as not legally sustainable.

In *Pressman,* this Court held that a plaintiff must satisfy a two-part test to demonstrate a breach of the covenant of good faith and fair dealing under the public policy category: (i) the employee must assert a public interest recognized by some legislative, administrative or judicial authority and (ii) the employee must occupy a position with responsibility for advancing or sustaining that particular interest. 679 A.2d at 441–42; *see e.g. Shearin v. E.F. Hutton Group, Inc.,* Del. Ch., 652 A.2d 578, 587–89 (1994) (holding that attorney fired for refusing to violate her ethical duties has a cause of action). Lord argues that 16 *Del. C.* § 1121(17), providing that "[e]ach patient and resident shall have the right to retain and use his/her personal clothing and possessions where reasonable, and shall have the right to security in the storage and use of such clothing and possessions," expresses such a policy. In effect, she argues that her discharge resulted from her efforts to advance that policy by reporting Souder's alleged wrongdoing.

 This argument is not persuasive. While Lord's allegation that Souder misappropriated the property of deceased residents arguably implicates a legislatively sanctioned public interest, there is no support for the conclusion that Lord, as an administrative secretary, occupied a position with responsibility for advancing that interest. Because Lord is unable to assert a responsibility for implementing a recognized public interest, her public policy claim must fail.

 Another legislatively-based public policy claim advanced by Lord, without elaboration, involves 16 *Del. C.* § 1132 which states in relevant part:

Any employee of a [nursing home, sanatorium, rest home or boarding home for the care of human beings] or anyone who provides services to a patient or resident of a facility on a regular or intermittent basis who has reasonable cause to believe that a patient or resident in a facility has been abused, mistreated or neglected shall immediately report such abuse, mistreatment or neglect to the Department [of Health and Social Services] by oral communication. A written report shall be filed by the employee or service provider within 48 hours after the employee or service provider first gains knowledge of the abuse, mistreatment or neglect.

While this statute expresses a legislatively recognized public interest and, as an "employee," Lord occupied a position with responsibility for that particular interest, more is required. The public interest expressed in this statute is the reporting of abuse or neglect to the Department of Health and Social Services, not to one's supervisor. Moreover, there is no allegation that Souder's conduct amounted to such abuse or neglect.

 Finally, we agree with the Superior Court that *Pressman's* categories are exclusive. As this Court noted in *Cincinnati SMSA Ltd. Partnership v. Cincinnati Bell Cellular Sys. Co.,* Del.Supr., 708 A.2d 989, 992 (1998), "implying obligations based on the covenant of good faith and fair dealing is a cautious enterprise." Although our decision in *Pressman* does not expressly state that the four categories are the exclusive means by which Lord may obtain relief for wrongful termination of an employment-at will contract, we believe that finding the categories to be exclusive is the better approach. Requiring at-will employee-plaintiffs to fit within one of the four established *Pressman* categories will prevent further erosion of an employment at-will doctrine already riddled with exceptions. Thus, we hold the Superior Court's dismissal of Lord's claim for wrongful discharge to be proper.

## V

■ We next turn to Lord's claim for fraud. The elements of fraud under Delaware law are well established. A party claiming fraud must allege:

1) a false representation, usually one of fact, made by the defendant;

2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

3) an intent to induce the plaintiff to act or to refrain from acting;

4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and

5) damage to the plaintiff as a result of such reliance.

*Stephenson v. Capano Dev., Inc.*, Del. Supr., 462 A.2d 1069, 1074 (1983).

In support of her fraud claim, Lord's complaint contains the following factual allegations: (i) Peninsula "made promises to protect Lord from reprisals from Souder" which were not honored (Compl. at 5, ¶ 32); (ii) the promises were made "in reckless disregard of whether or not they were true" because "[a]t the time the said assurances were made by Hagermann to Lord, [Peninsula] had not decided to protect Lord from said reprisals" (Compl. at 3–4, ¶ 18–19); (iii) the promises were made "with the intent to induce Lord to supply information regarding Souder's wrongdoing" (Compl. at 5, ¶ 32); (iv) "Lord disclosed the information related to Souder's improper practices requested by Hagermann, after Lord sought and obtained from Hagermann assurances that if she disclosed such information, she would be protected from any reprisals by Souder" (Compl. at 3, ¶ 17); and (v) Peninsula's actions have caused Lord to suffer "loss of salary and benefits, damage to her reputation, and ability to earn wages or other compensation." (Compl. at 5, ¶ 30).

The Superior Court's rejection of the fraud claim was based on its findings, as previously discussed, that: (i) Lord's alleged reliance as an at-will employee was *per se* unreasonable and (ii) Lord's injury was entirely speculative because she could have been terminated at any time for any reason. We have already rejected these findings in the context of our review of the dismissal of the promissory estoppel claim and our holding continues to have pertinency here.

■ Peninsula makes the additional argument that Lord's fraud claim fails because she has failed to plead scienter or the intent to deceive. This argument, however, lacks any sufficient legal basis. It is well-settled under both Delaware law and the law of most other jurisdictions that the scienter or requirement can be satisfied by a showing of recklessness. *See Stephenson*, 462 A.2d at 1074; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 107, at 741–42 (5th ed.1984). As *Prosser and Keeton* states:

There is of course no difficulty in finding the required intent to mislead where it appears that the speaker believes his statement to be false. Likewise there is general agreement that it is present when the representation is made without belief as to its truth, or with reckless disregard whether it be true or false. Further than this, it appears that all courts have extended it to include representations made by one who is conscious that he has no sufficient basis of information to justify them.

§ 107, at 741–42.

■ We find that the complaint adequately alleges a factual basis for each required element of fraud and is sufficient to withstand Peninsula's motion to dismiss. The Superior Court's ruling to the contrary is reversed.

## VI

■ Lastly, we consider Lord's claim for *prima facie* tort. *Prima facie* tort is defined as "[t]he intentional harm infliction, resulting in damage, without excuse

or justification, by an act or series of acts which would otherwise be lawful and which acts do not fall within the categories of traditional tort." *Kaye v. Pantone, Inc.,* Del. Ch., 395 A.2d 369, 373 (1978). In dismissing Lord's claim, the Superior Court did not reach the merits of that claim, basing its holding, instead, on its finding that such a claim is barred by the exclusivity provision of the Workers' Compensation statute. 19 *Del. C.* § 2304.[4] Although Souder contends that Lord's *prima facie* tort claim was properly dismissed on this basis, she argues that the dismissal of Lord's claim also was proper because Lord: (i) alleged other recognized torts; (ii) failed to allege that Souder committed an "intentional harm"; (iii) failed to adequately plead special damages; and (iv) Lord's claim fundamentally conflicts with the employment at-will doctrine.

■■■■■ As this Court stated in *Kofron v. Amoco Chem. Corp.,* Del.Supr., 441 A.2d 226, 231 (1982), "the twin purposes of the Delaware Workmen's Compensation Law are to provide a scheme for assured compensation for work-related injuries without regard to fault and to relieve employers and employees of the expenses and uncertainties of civil litigation." The statute makes clear, however, that the exclusivity provision does not apply to all injuries arising out of and in the course of employment but, rather, only to "personal" injuries. 19 *Del. C.* § 2304. "Personal" injuries are defined as "violence to the physical structure of the body, such disease or infection as naturally results directly therefrom when reasonably treated and compensable occupational diseases and compensable ionizing radiation injuries arising out of and in the course of employment." 19 *Del. C.* § 2301(12). Here, the harm flowing from Souder's role in Lord's termination, if it constitutes tortious conduct at all, affects a proprietary

or financial interest and, as such, is not a "personal injury" within the purview of the Workers' Compensation statute. *See Battista v. Chrysler Corp.,* Del.Super., 454 A.2d 286, 289–90 (1982) (defamation claim is not barred by 19 *Del. C.* § 2304 because defamation does not constitute a "personal injury" under the Workers' Compensation statute). Accordingly, we reject the Superior Court's conclusion that Lord's claim is barred by the exclusivity provision of the Workers' Compensation statute.

■■ We are, however, persuaded by Souder's argument that Lord's claim must be dismissed due to its inconsistency with the employment at-will doctrine. In fashioning an employment at-will jurisprudence that is both practical as well as equitable, Delaware courts have attempted to strike a balance between competing interests. There is the need to avoid judicial intrusion into management decisions in the contractual relationship between employers and employees. At the same time, recognized instances of bad faith by employers should not be without remedy. *See Merrill,* 606 A.2d at 101. Thus, the exceptions to the employment at-will doctrine are narrow and discrete. Here, Lord's effort to maintain an action for wrongful discharge under the guise of a *prima facie* tort claim doctrine, is an indirect effort to enlarge *Pressman's* exclusive categories. Such a precedent would, in effect, topple the precarious legal balance that ensures that at-will employment remains the general rule rather than the exception. We view Lord's *prima facie* tort claim to be inconsistent with the employment at-will doctrine and affirm its dismissal.

Having affirmed the dismissal of Lord's *prima facie* tort claim on this basis, we need not address Souder's alternative

---

4. 19 *Del. C.* § 2304 provides:
Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

grounds for dismissal based on alleged inadequacies in the pleadings.

## VII

For the foregoing reasons, we affirm the Superior Court's dismissal of Lord's wrongful discharge and *prima facie* tort claims but reverse that court's dismissal of her promissory estoppel and fraud claims. This action is remanded for further proceedings.

LAMB, Vice Chancellor, concurring:

I concur in the judgment of the Court reversing the decision below. I write separately because the factual pattern presented by the complaint is, in my opinion, more appropriately analyzed under the law of contract than as an instance of promissory estoppel. Promissory estoppel involves "informal promises for which there was no bargained-for exchange but which may be enforceable because of antecedent factors that caused them to be made or because of subsequent action that they caused to be taken in reliance." 3 Eric Holmes Mills, et al., *Corbin on Contracts*, § 8.1, at 5 (Rev. ed.1996). Here, there are no "antecedent factors" in issue, nor is there any "subsequent action" apart from Lord's disclosure to Hagermann of the exact information his promise sought to elicit from her. Thus, the facts sufficiently allege a "bargained-for exchange" to suggest the existence of an enforceable contract.[5]

A fair reading of the facts alleged is that Lord and Peninsula (through Hagermann) bargained for and entered into a contract modifying her preexisting contract of at-will employment. Paragraphs 16 and 17 of the complaint allege that when Hagermann approached Lord and asked her to explain what she knew about Souder's improper conduct, Lord first sought and obtained from him an offer that, if she divulged what she knew, she would be protected from reprisal. These allegations are sufficient to support a conclusion that, when Lord accepted Hagermann's offer of protection by revealing what she knew, a contract modifying the terms of her employment came into existence. Peninsula breached this contract when, it is alleged, it permitted Souder to fire Lord.

The majority suggests that Lord's disclosure of information did not "ris[e] to the level of an enforceable consideration" for Hagermann's promise because Lord "already had a duty to report" such information to him. However, Hagermann did not insist that Lord perform whatever duty of disclosure she owed to him but, instead, bargained for precisely the performance she rendered. In the circumstances, I would enforce the bargain the parties made.

The practical consequences of Lord's claim being treated as one for breach of contract rather than a promissory estoppel are hard to predict. I do note, however, that *Corbin on Contracts*, in describing Delaware promissory estoppel cases, begins by saying "Sometimes less is more." This implies that plaintiffs who succeed in arguing promissory estoppel in Delaware are awarded greater damages than if their cases were analyzed as enforceable contracts.[6] To the extent this observation is

5. The distinction is significant because promissory estoppel is not merely an alternative ground on which to enforce an otherwise enforceable promise but, rather, a doctrine that allows courts to enforce promises made without "consideration." *See id*. As the majority's opinion correctly states, the purpose of the promissory estoppel doctrine is to prevent the injustice that occasionally results from a rigid adherence to the black letter law of contracts. *See Chrysler Corp. v. Quimby*,

Del.Supr., 144 A.2d, 123, 133 (1958). Thus, it must first appear that the set of facts at issue do not give rise to an enforceable contract before a court considers whether "injustice" will result.

6. *Keating v. Board of Educ. Of the Appoquinimink Sch. Dist.*, Del. Ch., C.A. No. 12589, 1993 WL 460527, at *4 (Nov. 3, 1993) *aff'd* Del.Supr., 650 A.2d 1305 (1994) (TABLE), illustrates the point made in Corbin. In that case, a non-tenured teacher alleged the

 

true, it points out the need both to pay closer attention to the distinction between contract and promissory estoppel in particular cases and to award remedies in cases of promissory estoppel with the same "conservative judgment and extreme care" that characterizes common law courts' willingness to recognize reasons to enforce informal promises. *Id.* Here, it would seem to be the case that Lord's financial detriment resulting from her termination will be the same whether her claim is analyzed as a breach of contract or under the doctrine of promissory estoppel.

breach of an oral representation that her contract would be renewed for another 1–year term. Finding that she detrimentally relied on that representation (most notably by purchasing a new automobile), the court awarded her 5 years of back pay and ordered her reinstatement.