**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| SARAH PETERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2023-1207-BWD |
| | ) | |
| GRACE PETERSON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING MOTION TO DISMISS

WHEREAS:[1]

A.     Plaintiff Sarah Peterson ("Plaintiff") owns 8.4 acres of real property in Laurel, Delaware (the "Property").  Pet. ¶ 1.  Defendant Grace Peterson ("Defendant") is Plaintiff's ex-mother-in-law.  Defendant "own[s] in trust" approximately 64.5 acres adjacent to the Property.  *Id*. ¶ 2.

B.     In 2002, Defendant and her husband, Ben A. Peterson, gifted the Property to their son, Allen Peterson, and his then-wife, Plaintiff.  *Id*. ¶ 3.  In January

---

[1] The following facts are taken from the Verified Petition for Specific Performance (the "Petition") and the documents incorporated by reference therein.  Verified Pet. For Specific Performance [hereinafter, "Pet."], Dkt. 1.  *See Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citation omitted)).

2019, Plaintiff filed for divorce and Allen[2] "was ordered to vacate the marital home on the [P]roperty." *Id.* ¶ 5.

C.    According to the Petition, "[d]uring the course of [the divorce] proceedings, it was discovered that Allen Peterson, a general contractor, had constructed a barn and corral on the [P]roperty that encroached into his mother's property" (the "Encroachment"). *Id.* ¶ 6. "As a result of the [E]ncroachment (which in turn created setback violations), Allen . . . was charged by Sussex County with a violation of" the Sussex County Code. *Id.* Allen subsequently "took up residence for a time in the barn[,]" adding kitchen facilities for which "he received a second Sussex County citation . . . ." *Id.* ¶ 7.

D.    To resolve her son's code violations, on August 7, 2020, Defendant wrote a letter to Sussex County stating that she would "give a portion of land that is needed to comply with set backs once the trial [in the divorce proceeding] is completed" (the "Letter"). Pet., Ex. A; *see also* Pet. ¶ 8.

E.    Plaintiff purchased the Property in connection with a January 31, 2022 Family Court Order resolving the divorce proceeding. Pet. ¶ 9. On May 27, 2022, Allen transferred his interest in the Property to Plaintiff. *Id.* ¶ 11.

---

[2] For clarity, this Order refers to Allen Peterson by his first name. No familiarity or disrespect is intended.

F.       Despite her promise in the Letter, Defendant never transferred the property needed to resolve the Encroachment (the "Subject Land"). After the divorce proceeding concluded, Plaintiff and Defendant each engaged attorneys, and "[o]ver a period of several months, the two attorneys worked to find a way for Defendant to transfer the property necessary to resolve the [E]ncroachment." *Id.* ¶ 14. "That included Plaintiff's agreement to pay Defendant the sum of $10,000.00, even though that was never mentioned previously." *Id.*

G.       On October 3, 2022, Plaintiff's attorney emailed Defendant's attorney, attaching a survey of the Subject Land to be transferred (the "Survey"), a "Boundary Line Agreement," and an "Access Easement Agreement." *Id.* ¶¶ 16-17. In that email, Plaintiff's attorney requested that Defendant's attorney "let [him] know if [the documents] are acceptable to be signed by our clients," and "[i]f so, then please have [Defendant] sign all three documents . . . ." Pet., Ex. D.

H.       On October 24, 2022, Defendant's attorney responded, confirming that Defendant was "in agreement with the survey as it ha[d] been revised" and would "review the documents for the Easement and Boundary and get [Plaintiff's attorney] [his] edits hopefully next week and [they] c[ould] potentially put this matter to bed by early November." Pet. ¶ 20; *see also* Pet., Ex. E.

I.       Nearly seven months later, on May 15, 2023, Plaintiff's attorney "followed up with an inquiry as to where things stood[,]" but Defendant's attorney

3

"never provided any proposed edits to either of the two agreements." Pet. ¶¶ 21, 23. Instead, on May 24, 2023, Defendant's attorney informed Plaintiff's attorney that he no longer represented Defendant. *Id*. ¶ 23; *see also* Pet., Ex. F. Since then, Plaintiff has "made efforts to contact the Defendant, but to no avail." Pet. ¶ 24.

J. Plaintiff avers that her "plan has always been to operate the [P]roperty as a venue for weddings and other functions, in order to take advantage of the scenic vistas on the [P]roperty." *Id*. ¶ 9. "In furtherance of that plan, Plaintiff applied for a conditional use from Sussex County[,]" but "the County denied the application, and will not consider entertaining another such . . . application unless and until the [E]ncroachment is resolved." *Id*. ¶¶ 9-10.

K. On December 1, 2023, Plaintiff filed the Petition. The Petition asserts four counts: Count I alleges that Defendant has breached a contract with Plaintiff by refusing to transfer the Subject Land to resolve the Encroachment; Count II seeks specific performance of that purported contract; Count III requests damages for Defendant's alleged breach of contract; and Count IV asserts a claim for breach of the implied covenant of good faith and fair dealing.

L. On January 8, 2024, Defendant filed a Motion to Dismiss Plaintiff's Claims Pursuant to the Statute of Frauds (the "Motion to Dismiss"). Def. Grace Peterson's Mot. To Dismiss Pl.'s Claims Pursuant To The Statute of Frauds [hereinafter, "OB"], Dkt. 8. On February 2, 2024, Plaintiff filed an answering brief

in opposition to the Motion to Dismiss. Pl.'s Ans. Br. In Opp'n To Def.'s Mot. To Dismiss [hereinafter, "AB"], Dkt. 11. On February 22, 2024, Defendant filed a reply brief in further support of the Motion to Dismiss. Def. Grace Peterson's Reply Br. In Supp. Of Mot. To Dismiss [hereinafter, "RB"], Dkt. 12. Oral argument on the Motion to Dismiss is unnecessary.

NOW, THEREFORE, IT IS HEREBY ORDERED, this 25th day of March, 2024, as follows:

1. Defendant has moved to dismiss the Petition under Court of Chancery Rule 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well-pleaded' if they give the opposing party notice of the claim; [and] (3) draw all reasonable inferences in favor of the non-moving party . . . ." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011). "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'" *Id*. at 537.

2. In support of dismissal, Defendant contends that (1) the Petition fails to allege facts supporting the elements of a contract; and (2) even if the Petition adequately alleged a contract, Delaware's Statute of Frauds prevents enforcement because any such contract was not memorialized in writing.

3. Neither the Petition nor the parties' briefing makes clear what contract Plaintiff seeks to enforce. Based on the facts alleged, there are two potential "contracts": (1) Defendant's promise, reflected in the Letter, to "give a portion of land that is needed to comply with set backs"; and (2) Plaintiff's agreement to purchase, and Defendant's agreement to sell, the Subject Land, as contemplated in emails and drafts exchanged between the parties' attorneys in 2022 and 2023. *See* Pet., Exs. A, D-H.

4. "[A] valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

5. While the parties debate, among other things, whether the terms of any purported contract are sufficiently definite to be enforced,[3] "the 'critical [question] is whether the parties reached an agreement to be bound with respect to those material terms.'" *Hyetts Corner, LLC v. New Castle Cnty.*, 2021 WL 4166703, at *6 (Del. Ch. Sept. 14, 2021) (alteration in original) (quoting *VS&A Commc'ns P'rs, L.P. v. Palmer Broad. Ltd. P'ship*, 1992 WL 339377, at *10 (Del. Ch. Nov. 16, 1992)). Under Delaware law,

---

[3] *See* OB at 5-6; AB at 10; RB at 5.

6

"[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." A valid contract exists only if "the parties have manifested mutual assent to be bound by that bargain." "[M]anifestation of mutual assent is an external or objective standard for interpreting conduct." A party "manifests an intention [to be bound] if he believes or has reason to believe that the promisee will infer that intention from his words or conduct." The "relevant inquiry" is whether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that agreement concluded the negotiations.

*Id*. (internal footnotes and quotation marks omitted).

6.      The Petition here fails to allege that Plaintiff and Defendant reached a "complete meeting of the minds" on the terms of a contract to transfer the Subject Land. *Id.* at *7 (citation omitted).

7.      First, on its face, the Letter does not evidence a contract to sell real property, but an intention, unsupported by consideration, to "give a portion of land that is needed to comply with set backs." Pet., Ex. A. *See* Pet. ¶ 14 (alleging a purchase price was "never mentioned" in the Letter); *see also Perry v. Neupert*, 2019 WL 719000, at *29 (Del. Ch. Feb. 15, 2019) (finding a "transfer of equity . . . lacked consideration, making it a gift").

8.      Second, the Petition fails to adequately allege that the parties reached a "meeting of the minds" through email exchanges between their attorneys. The Petition alleges that on October 3, 2022, Plaintiff's attorney emailed Defendant's attorney a copy of the Survey, a draft "Boundary Line Agreement," and a draft

7

"Access Easement Agreement," asking him to "let [Plaintiff's attorney] know if [the documents] [we]re acceptable to be signed by [their] clients," and if so, to "have [Defendant] sign all three documents . . . ." Pet. ¶ 16; *see also* Pet., Ex. D. Three weeks later, on October 24, 2022, Defendant's attorney confirmed that Defendant was "in agreement with the [S]urvey as it ha[d] been revised" and that he would "review the documents for the Easement and Boundary and get [Plaintiff's attorney] [his] edits hopefully next week and [they] c[ould] potentially put this matter to bed by early November." Pet. ¶ 20; *see also* Pet., Ex. E. But nearly seven months later, on May 15, 2023, Plaintiff's attorney had to "follow[] up with an inquiry as to where things stood," because Plaintiff was still awaiting Defendant's response. Pet. ¶ 21.

9. A reasonable negotiator could not have believed the above exchanges "'concluded the negotiations between the parties.'" *Hyetts Corner, LLC*, 2021 WL 4166703, at *7 (citation omitted). Rather, the allegations of the Petition and the documents incorporated by reference therein compel the opposite inference—that "[n]either side manifested an intent to be bound by the terms" reflected in the emails and draft agreements exchanged between their attorneys. *Id.* at *6; *see also Apennine Acq. Co., LLC v. Quill*, 2023 WL 3139934, at *5 (Del. Ch. Apr. 28, 2023) (concluding the plaintiff failed to adequately allege a meeting of the minds where the parties' email correspondence invited "questions or concerns" about a draft

8

agreement and the plaintiff later followed up to confirm whether the parties were "good to proceed"), *R. & R. adopted*, 2023 WL 3479574 (Del. Ch. 2023).

10. Since the Petition does not adequately allege that the parties entered into a contract, I do not address Defendant's arguments that Delaware's Statute of Frauds, 6 *Del. C.* § 2714(a), would prevent enforcement because the purported contract for the sale of land was not memorialized in writing.

11. Although the Petition fails to allege that the parties entered into a binding contract, it does allege facts sufficient to state a claim for promissory estoppel.[4]

12. To establish a claim for promissory estoppel,

> a plaintiff must show by clear and convincing evidence that: (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise.

*McKee v. McKee*, 2007 WL 1378349, at *2 (Del. Ch. 2007) (internal quotation marks omitted) (quoting *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000)).[5]

---

[4] While the Petition does not include a "count" for promissory estoppel, "[t]he court is not bound to analyze the case solely through the counts presented in the pleadings." *Bamford v. Penfold, L.P.*, 2022 WL 2278867, at *25 (Del. Ch. June 24, 2022).

[5] *See also* Restatement (Second) of Contracts § 90 (Am. L. Inst. 1981), Westlaw (database updated Oct. 2023)

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does

13. It is reasonably conceivable, based on the facts alleged in the Petition, that (1) Defendant promised in the Letter to give Plaintiff and Allen the Subject Land to resolve the Encroachment;[6] (2) Defendant reasonably could have expected that such promise would induce Plaintiff to take action in reliance on that promise; (3) Plaintiff did, in fact, rely on that promise to her detriment as she litigated the divorce proceeding with the expectation that she would be able to use the Property as a wedding venue after the Encroachment was resolved;[7] and (4) injustice can be avoided only by enforcement of that promise.[8]

14. For the foregoing reasons, the Motion to Dismiss is DENIED.

---

induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*See also Deene v. Peterman*, 2007 WL 2162570, at *6 (Del. Ch. July 12, 2007) ("[T]o the extent that [defendant] now claims that she offered a mere gift . . . principles of promissory estoppel would render her promise enforceable because of the [plaintiffs'] extensive reliance . . . .").

[6] *See, e.g.*, Pet. ¶ 8; Pet., Ex. A.

[7] *See* Pet. ¶¶ 9-10; AB, Ex. A at 10-11, 18-19, 23, 28, 37 (discussing Plaintiff's intended use of the Property as a wedding venue in connection with the Family Court's equitable division of Plaintiff's and Allen's assets).

[8] *See, e.g.*, Pet. ¶ 24 ("Other than moving the large 9,698 square foot barn—an expensive, if not impossible, task—transferring additional property to her son and daughter-in-law was the only way to eliminate the encroachment and the citation against Allen Peterson.").

15.     This Order is a final report pursuant to Court of Chancery Rules 143 and 144.  Exceptions to this and all other interlocutory reports in this action are stayed under Court of Chancery Rule 144(f).

/s/ Bonnie W. David

Bonnie W. David
Magistrate in Chancery

11