**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| SHERRY ANN GILLESPIE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: K23C-09-034 RLG |
| v. | ) | |
| | ) | |
| THOMAS HAMILTON CARPER, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: August 9, 2024[1]
Decided: November 7, 2024

**<u>ORDER</u>**

*Defendant's Motion to Dismiss – GRANTED.*

Dianna E. Stuart, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware. *Attorney for Plaintiff.*

Brian T. McNelis, Esquire, Young & McNelis, Dover, Delaware; Steven F. Mones, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware. *Attorneys for Defendant.*

**GREEN-STREETT, J.**

---

[1] The transcript from the hearing in this matter was not received until October 3, 2024.

## I.    Introduction

After involvement in a car accident, the party without fault in that accident sought recompense from the one who caused it.   The parties settled the case, executed a settlement agreement, and released all claims against the at-fault party. A question then arose about potential additional coverage for the released tortfeasor. As no ambiguity, misconduct, or misrepresentation on the part of the tortfeasor exists to invalidate the settlement agreement and release, the Motion to Dismiss is **GRANTED**.

## II.    Factual and Procedural Background

On or about October 2, 2021, Plaintiff Sherry Ann Gillespie and Defendant Thomas Carper were involved in a car accident.[2]  The parties engaged in settlement discussions, during which Ms. Gillespie became aware that there were potentially two insurance companies providing coverage for Mr. Carper – Progressive and State Farm.[3]  After identifying Progressive as "the liability carrier for the vehicle" driven by Mr. Carper at the time of the accident, Ms. Gillespie's counsel sent Progressive a demand letter.[4]

---

[2] Compl. at 1, D.I. 1 (Sept. 29, 2023).

[3] Pl.'s Resp. in Opp'n to Mot. to Dismiss at 2, D.I. 19 (July 26, 2024).

[4] Id.

On August 22, 2023, Progressive responded by offering Mr. Carper's policy limit, $25,000.00, to resolve Ms. Gillespie's claim.[5]  At that time, Progressive informed Ms. Gillespie that "[w]e have filed a claim with State Farm … to investigate potential excess coverage for the driver, Thomas Carper.  We are awaiting [their] response."[6]

Progressive emailed a staff member from Plaintiff Counsel's law firm (the "Staff Member") on September 11, 2023.[7]  The email stated, "[t]he State Farm policy was confirmed by the policy holders," and "State Farm should be providing excess coverage unless there is an applicable exclusion on the policy."[8]  Staff Member followed up with Progressive on September 18, 2023, indicating she had "yet to hear back from State Farm regarding [its] policy."[9]  Staff Member also indicated "in a previous discussion, you stated that Mr. Thomas Carper had signed an [Affidavit of No Other Insurance] first and then realized it was incorrect."[10]  Staff Member ended

---

[5] Pl.'s Ex. A, D.I. 21 (July 26, 2024) (Progressive's response to Ms. Gillespie's demand letter).

[6] Id.

[7] Pl.'s Ex. D, D.I. 24 (July 26, 2024).

[8] Id.

[9] Id.

[10] Id.

the email by informing Progressive, "if there is no applicable coverage due to it being a rental, I will still need a copy of Mr. Carper's affidavit."[11]

On the very same day Staff Member was attempting to confirm additional coverage, Ms. Gillespie, upon the advice of counsel, signed the "Full and Final Release Settlement Agreement" (the "Agreement").[12] The Agreement constitutes a "full and final release of any and all claims arising out of said accident."[13] The Agreement "does not waive any underinsured or personal injury protection subrogation claims held by or on behalf of the releasing party or the releasing party's insurer."[14]

The following day, Staff Member informed Plaintiff's Counsel "State Farm has not made a decision regarding liability coverage."[15] Plaintiff's Counsel then sent a letter to State Farm requesting confirmation of liability coverage on September 25, 2023.[16] Two days later, State Farm left a voice message for Staff Member indicating it had not yet determined if it would provide coverage.[17] Ms. Gillespie filed the

---

[11] Id.

[12] Mot. to Dismiss, D.I. 8, Def.'s Ex. 3 (Mar. 19, 2024) (the "Agreement").

[13] The Agreement at 1 ¶ 1.

[14] Id. at 2.

[15] Pl.'s Ex. E, D.I. 25 (July 26, 2024).

[16] Pl.'s Ex. F, D.I. 26 (July 26, 2024).

[17] Pl.'s Ex. G, D.I. 27 (July 26, 2024).

instant complaint (the "Complaint") on September 29, 2023.[18] The Complaint makes no mention of any correspondence with any insurance provider, nor does it allege any fraud or misrepresentation on the part of Mr. Carper.[19]

Mr. Carper filed the instant Motion to Dismiss on March 19, 2024, asserting the Agreement barred any further recovery by Ms. Gillespie against Mr. Carper.[20] Plaintiff's Counsel requested, without opposition, that any response and hearing on that motion be delayed until counsel returned from medical leave.[21] On July 26, 2024, Ms. Gillespie filed two pleadings – a Motion for Leave to Amend Complaint[22] and a Response in Opposition to Defendant's Motion to Dismiss.[23] Both filings alleged State Farm and Mr. Carper's conduct leading up to Ms. Gillespie signing the Agreement constituted "misrepresentation and concealment of coverage."[24]

The Court permitted a second attorney for Mr. Carper, provided by Progressive, to file a memorandum in support of Mr. Carper's Motion to Dismiss.[25]

---

[18] D.I. 1.

[19] See id.

[20] Mot. to Dismiss at 3.

[21] D.I. 9 (Mar. 26, 2024).

[22] D.I. 17 (July 26, 2024).

[23] D.I. 19 (July 26, 2024).

[24] Pl.'s Resp. in Opp'n of Mot. to Dismiss at 3.

[25] D.I. 32 (Aug. 2, 2024).

The Court heard oral argument on Mr. Carper's Motion to Dismiss on August 9, 2024.[26] The Court orally granted Mr. Carper's motion at the oral argument hearing. The Court advised the parties a written decision would follow to outline the Court's decision further.

### III. Standard of Review

Although stylized as a "Motion to Dismiss Pursuant to Accord and Satisfaction," Mr. Carper's motion translates as a motion for judgment on the pleadings given his motion entirely relies on the Agreement signed by Ms. Gillespie. Superior Court Civil Rule 12(c) governs motions for judgment on the pleadings. This Court grants a motion for judgment on the pleadings "only when no material issue of fact exists and the movant is entitled to judgment as a matter of law."[27] The Court reviews all facts and reasonable inferences in the light most favorable to the non-moving party.[28]

---

[26] D.I. 35 (Aug. 9, 2024).

[27] Davis v. Tristar Claims Mgmt. Servs., Inc., 2024 WL 885440, at *2 (Del. Super. Feb. 29, 2024).

[28] Id.

## IV.    Discussion

Mr. Carper contends Ms. Gillespie, by signing the Agreement, released any claims she may have possessed against Mr. Carper – exclusive of any remaining or outstanding underinsured, personal injury protection, or subrogation claims.[29]  Ms. Gillespie does not dispute that the Agreement, which she signed, emphasizes that "this is a full and final release of any and all claims arising out of said accident."[30] Gillespie contends, however, that Mr. Carper and State Farm acted to conceal or fraudulently misrepresent the extent of available insurance coverage.[31]  As Ms. Gillespie seeks to have the Agreement rendered invalid based on fraudulent misrepresentation, Ms. Gillespie must allege facts allowing the Court to infer:

> (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.[32]

---

[29] Mot. to Dismiss at 3.

[30] The Agreement at 1 ¶ 1.

[31] Pl.'s Resp. to Mot. to Dismiss at 3; see also Pl.'s Mot. for Leave to Amend Compl., D.I. 17 (July 26, 2024).

[32] Lord v. Souder, 748 A.2d 393, 402 (Del. 2000) (citing Stephenson v. Capano Dev., Inc., 462 A.2d 1069, 1074 (Del. 1983)).

A. **Ms. Gillespie fails to allege any false representation made by Mr. Carper**

Ms. Gillespie does not allege any facts supporting an inference that Mr. Carper made any false representation. Ms. Gillespie's response to Mr. Carper's Motion to Dismiss lacks any reference to any representation made by Mr. Carper, fraudulent or otherwise.[33] Likewise, there are no allegations of fraud against Mr. Carper contained within Ms. Gillespie's proposed amended complaint.[34]

During oral argument, Plaintiff's Counsel argued Mr. Carper's misrepresentations consisted of (1) his disavowal of the Affidavit of No Other Insurance (the "ANOI") he executed; and (2) his failure to investigate fully whether State Farm would provide coverage.[35] Mr. Carper allegedly signed the ANOI and provided it to Progressive, before later telling Progressive he wished to disavow the affidavit because he needed to check with his parents about any other potential insurance policies.[36] Critically, neither Progressive nor Mr. Carper ever provided Ms. Gillespie with the disavowed ANOI.[37] As Staff Member's September 18th email

---

[33] See Pl.'s Resp. to Mot. to Dismiss, D.I. 19.

[34] See Pl.'s Mot. for Leave to Amend Complain, Pl.'s Ex. A, D.I. 17.

[35] Tr. of Oral Arg. at 20.

[36] Id.

[37] Id.

8

evidences, Ms. Gillespie and Plaintiff's Counsel were aware of the ANOI only in the context of Mr. Carper having already disavowed it.[38]

The ANOI cannot constitute a fraudulent misrepresentation in this context. Mr. Carper realized the ANOI could be inaccurate, and disavowed it before Ms. Gillespie ever had a chance to rely on it. Mr. Carper acted appropriately by realizing he may have misstated material facts contained in the ANOI, and taking the necessary corrective step to ensure he did not misrepresent his insurance coverage to Ms. Gillespie. As Mr. Carper corrected the mistake before Ms. Gillespie was provided the ANOI, and before she executed the Agreement, Mr. Carper's mistake on the ANOI cannot constitute fraudulent misrepresentation.

As to Mr. Carper's alleged failure to investigate his insurance situation fully, to the extent the Court understands this assertion, it, too, must fail. Mr. Carper appears to have acted consistent with any legal obligations or responsibilities he maintained. Ms. Gillespie possessed no obligation to enter into the Agreement absent further clarity regarding Mr. Carper's insurance coverage. Ms. Gillespie could have waited until Mr. Carper or his insurers updated her. She certainly also could have continued to communicate with both Progressive and State Farm on her own to determine the extent of any applicable coverage. That Ms. Gillespie chose

---

[38] Pl.'s Ex. D, D.I. 24.

not to take those steps before entering into the Agreement does not transform Mr. Carper's uncertainty about his insurance coverage into a fraudulent misrepresentation.

**B.** **As a non-party to both this case and the Agreement, any alleged misrepresentation on the part of State Farm does not void the Agreement**

Ms. Gillespie's written responsive filings heavily focus on the alleged misconduct of State Farm leading up to, and immediately following, the execution of the Agreement. State Farm, however, took no part in the formation of the Agreement and does not stand as a party in this case. Although Ms. Gillespie may maintain some claim against State Farm if State Farm truly did misrepresent or conceal the truth about the extent of its coverage, State Farm's action or inaction does not invalidate the Agreement. An essential element of fraudulent misrepresentation requires that the *defendant* made some knowing, false misrepresentation.[39] As State Farm has not been named as a defendant in this case, Ms. Gillespie cannot advance a claim for fraudulent misrepresentation against State Farm in this proceeding.

---

[39] See Bromwich v. Hanby, 2010 WL 8250796, at *6 (Del. Super. July 1, 2010) (dismissing a claim for fraudulent misrepresentation where the plaintiff could not show any misrepresentation on the part of the defendant).

**C.** **Ms. Gillespie would not have been justified in relying upon any potential misrepresentation regarding State Farm's coverage**

Even if the Court determined Ms. Gillespie successfully demonstrated Mr. Carper made some fraudulent misrepresentation – or that she could proceed based on some theory about misrepresentation made by State Farm – her argument centered on fraudulent misrepresentation must fail because she could not have justifiably relied on those misrepresentations. Progressive informed Ms. Gillespie of a claim number it filed with State Farm at least as early as its response letter to her on August 22, 2023.[40] As of September 6, 2023, Staff Member made an inquiry to Progressive seeking information on any coverage provided by State Farm.[41] Progressive informed Staff Member that State Farm "was confirmed by the policy holders," and had transferred the case to an adjuster.[42]

On September 18, 2023 – the day Ms. Gillespie signed the Agreement – Staff Member made another request for confirmation of State Farm's coverage.[43] Staff Member acknowledged she knew about Mr. Carper's decision to disavow the ANOI because he realized it might be incorrect.[44] The following day, Staff Member

---

[40] Pl.'s Ex. A, D.I. 21.

[41] Pl.'s Ex. B, D.I. 22.

[42] Pl.'s Ex. D, D.I. 24.

[43] Pl.'s Ex. C, D.I. 23.

[44] Id.

informed Plaintiff's Counsel "State Farm [had] not made a decision regarding liability coverage," and "I asked [the adjuster] to return my call to advise as to if there is an exclusion on State Farm's policy."[45]

Collectively, the correspondence regarding State Farm's potential coverage showcases Ms. Gillespie's and Plaintiff Counsel's knowledge that, at best, ambiguity remained regarding State Farm's coverage. As the plaintiff, Ms. Gillespie maintained the duty to investigate diligently whether State Farm possessed an obligation to provide coverage.[46] Further, Progressive provided Ms. Gillespie the claim number for the State Farm claim, as well as information that, at a minimum, cast significant doubt on the insurance coverage situation.[47]

That information should have put Ms. Gillespie on notice that any denial of coverage State Farm delivered via telephone may have been in error. "[A] plaintiff's [diligent] efforts can be evidence that her reliance on a false representation was reasonable because she made efforts to verify the representation[,] and discovered no reason to doubt its truth."[48] Ms. Gillespie had ample reason to question whether

---

[45] Pl.'s Ex. E, D.I. 25.

[46] See Maverick Therapeutics, Inc. v. Harpoon Therapeutics, Inc., 2020 WL 1655948, at *30 (Del. Ch. Apr. 3, 2020) ("A plaintiff must not walk blindly into a situation, but rather is expected to undertake reasonable diligence to verify statements.").

[47] Pl.'s Ex. A, D.I. 21.

[48] Arwood v. AW Site Servs., LLC, 2022 WL 705841, at *24 (Del. Ch. Mar. 9, 2022), reargument granted on other grounds, 2022 WL 973441 (Del. Ch. Mar. 31, 2022).

State Farm would provide additional coverage. With those reasons in hand and eyes open to the possibility that State Farm might provide coverage, Ms. Gillespie chose to sign the Agreement, bind herself, and release any claims against Mr. Carper. She cannot now argue she justifiably relied on some alleged representation that State Farm's coverage did not apply.

### D. The additional discovery sought by Ms. Gillespie would not alter the Court's decision

During oral argument, Plaintiff's Counsel contended the record required supplementation from further discovery before a motion to dismiss could be properly considered.[49] That proposed discovery would consist of (1) determining why Mr. Carper disavowed the ANOI, as well as any follow-up conversations he may have had with his parents regarding insurance; and (2) the extent of State Farm's alleged misrepresentation.[50] Additional clarity on either point would not materially change the analysis the Court must undertake or the Court's ultimate conclusion.

Mr. Carper's reasons for disavowing the ANOI are largely immaterial. The record before the Court suggests he did so because he realized there might be additional coverage beyond what he initially believed, and did not want to lie on an

---

[49] Tr. of Oral Arg. at 20-21.

[50] Id.

affidavit.[51]  Even if discovery would reveal some ulterior motive behind Mr. Carper's decision, such a motive would not be grounds for fraudulent misrepresentation.  As outlined above, neither Progressive nor Mr. Carper ultimately provided the ANOI to Ms. Gillespie.[52]  Thus, no misrepresentation could have occurred regarding the ANOI because Mr. Carper never made any representation to Ms. Gillespie via the ANOI.

Similarly, any conversation between Mr. Carper and his parents regarding potential additional coverage would not change the Court's analysis.  Those conversations have no bearing on the information available to Ms. Gillespie at the time she signed the Agreement.  Ms. Gillespie was aware of the possibility of coverage through State Farm, regardless of whether Mr. Carper or his parents knew about that coverage.

As to any discovery related to State Farm's potential misrepresentations, that discovery must take place in a different case.  State Farm is not a party to this case, nor is it a party to the Agreement – the document controlling the outcome of this case.  Accordingly, further discovery as to State Farm's action or inaction does not materially affect the analysis of the instant motion.

---

[51] Pl.'s Ex. D, D.I. 24.

[52] Id.

14

## V.    Conclusion

Ms. Gillespie entered into the Agreement, despite her knowledge that additional coverage might be available through State Farm.  The Agreement released all claims against Mr. Carper.  The Agreement did not contain any exception for the potential additional State Farm coverage.  State Farm was not a party to the Agreement, and is not a defendant in this case.  Ms. Gillespie similarly fails to allege any misconduct by Mr. Carper.  Thus, Ms. Gillespie has not provided sufficient facts to her contention that the Agreement be invalidated based on fraudulent misrepresentation.  Ms. Gillespie signed the Agreement, and released all claims against Mr. Carper.  Mr. Carper's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge