# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DR. MEGHAN JOYCE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. N23C-09-167 SPL |
| | ) | |
| CADIA HEALTHCARE-SILVERSIDE, CADIA HEALTHCARE, LLC, JAN MUNDELL | ) ) ) ) | |
| Defendants. | ) | |

Submitted: April 10, 2026
Decided: June 18, 2026

## MEMORANDUM OPINION

*On Defendants' Motion for Summary Judgment,*
**GRANTED.**

Joseph J. Longobardi, Esq., LONGOBARDI & BOYLE LLC, Wilmington, Delaware; Thomas S. Harty, Esq., (*argued*) HARTY WILLIAMS, Philadelphia, Pennsylvania; *Attorneys for Plaintiff.*

Richard P. Beck, Esq., RICHARD BECK, LLC, Wilmington, Delaware; Brian D. Boreman, Esq. (*argued*), and Lauren A. Nehra, Esq., UNRUH, TURNER, BURKE & FREES, West Chester, Pennsylvania; *Attorneys for Defendants.*

**LUGG, J.**

**INTRODUCTION**

In September 2021, Dr. Meghan Joyce was terminated from her employment with Cadia Healthcare-Silverside. On September 20, 2023, Joyce sued Cadia Healthcare-Silverside, Cadia Healthcare LLC (together "Cadia"),[1] and Jan Mundell for defamation (slander and libel), Tortious Interference with Prospective Economic Advantage, Wrongful Termination (breach of contract), and Breach of the Implied Covenant of Good Faith and Fair Dealing.[2] Defendants answered the complaint,[3] the Court imposed a trial scheduling order,[4] and, after the close of discovery, the Defendants moved for summary judgment.[5] Joyce opposed the motion.[6] The parties agree that Mundell is not a proper party and have stipulated to her dismissal from the case.[7] On April 10, 2026, the Court heard argument on the motion and took the matter under advisement.[8]

---

[1] Joyce's complaint names both Cadia Healthcare-Silverside and Cadia Healthcare, LLC. Unless necessary to distinguish the business entities in the context of a particular argument, the Court will refer to the defendants collectively as "Cadia."

[2] D.I. 1 ("Compl.").

[3] D.I. 17.

[4] D.I. 24; D.I. 36.

[5] D.I. 46 ("MSJ").

[6] D.I. 51 ("Resp.").

[7] D.I. 54.

[8] D.I. 56.

The Court has considered the parties' arguments and the record in this case and concludes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[9] Defendants' motion for summary judgment is **GRANTED**.

## BACKGROUND[10]

On November 20, 2017, Joyce accepted an offer of employment from Cadia to serve as a "Physical Therapist for Cadia Rehabilitation Silverside."[11] Joyce's employment with Cadia was "at-will," and Cadia explained "[t]his means that either you or the company may terminate your employment at any time for any reason."[12] On the record before the Court, Joyce's employment continued without incident until September of 2021.

On September 14, 2021, Joyce completed a range of motion screen and an equipment assessment of J.L.[13] Before the screen, Joyce observed that J.L.'s feet

---

[9] Super. Ct. Civ. R. 56(c).

[10] Cadia Healthcare contends that the Court should not consider several documents offered by Joyce. D.I. 52 ¶¶ 9,11. Put simply, they contend that several statements do not qualify as affidavits. *Id.* ¶¶ 11, 25, 39. This Court may consider a statement purporting to be an affidavit when the statement attests that its contents are true. *Lehner v. Dover Downs, Inc.*, 2018 WL 2363474, at *1 (Del. Super. Ct. May 24, 2018). Here, the Court will consider the information proffered by Joyce to determine whether a material factual dispute exists.

[11] MSJ, Ex. A at 1.

[12] *Id.*

[13] Resp., Ex. 2 ("Joyce Affidavit") ¶¶ 12, 14.

appeared larger than normal and had redness throughout.[14] Joyce recommended J.L. wear heel protector boots while Joyce sought assistance from another therapist to complete the range of motion screen.[15] J.L. agreed and Joyce placed the boots on her.[16]

A short time later, Joyce returned with a physical therapist assistant, Erica Panichi, to complete J.L.'s range of motion screen.[17] During the range of motion screen, Joyce reported that J.L. yelled out in pain causing Joyce to stop the test on her left ankle.[18] With J.L.'s assent, Joyce moved to her right foot.[19] After completing the range of motion screen, Joyce placed boots back on J.L. and informed J.L. she would check on her later.[20]

Later that day, after Cadia nurses removed the boots, J.L. reported that she was in substantial pain.[21] J.L.'s left foot was warm to the touch and had slight

---

[14] *Id.* ¶ 15.

[15] *Id.* ¶¶ 18-19.

[16] *Id.* ¶ 19.

[17] *Id.* ¶ 23.

[18] D.I. 52 ("Reply") Ex. T ("Joyce Dep. Testimony Reply") at 45:5-6.

[19] *Id.* at 45:9-13.

[20] Joyce Affidavit ¶¶ 25-26.

[21] *Id.* ¶¶ 29-30.

bruising.[22]  X-rays of J.L.'s foot showed no fractures, osteopenia, or heel spurs.[23] Certified Nursing Assistants heard J.L. yell out in pain and ask Joyce to stop performing therapy on her feet.[24]  Nurses also spoke with J.L. after the incident, and J.L. informed them that Joyce "disregarded her request" to stop.[25]  The next day, September 15, 2021, a Cadia nurse reported the incident to the Delaware Department of Health & Social Services ("DHSS"),[26] and on September 16, 2021, Cadia suspended Joyce pending an investigation into her interaction with J.L.[27]

On September 21, 2021, three members of Cadia's corporate office delivered a presentation on patient abuse to employees.[28]  During the presentation, speakers described an incident between two therapists and a patient in which the patient asked the therapists to stop therapy and the therapists did not.[29]  The presenters mentioned that Cadia suspended the therapists involved in the alleged incident pending further investigation.[30]  Though not mentioned by name, at least one attendee deduced that

---

[22] *Id*. ¶ 30.

[23] *Id*. ¶ 34.

[24] MSJ, Ex. L, M.

[25] *Id*., Ex. J, K.

[26] *Id*., Ex. Q, R.

[27] Joyce Affidavit ¶ 45.

[28] *Id*. ¶ 51-52.

[29] *Id*. ¶ 51.

[30] Resp., Ex. 8 ¶ 9.

Joyce was one of the therapists.[31]  On September 23, 2021, Cadia terminated Joyce for a "violation of resident rights and inconsiderate care."[32]

On September 20, 2023, Joyce filed a complaint in this Court.[33]  She contends Cadia engaged in oral and written defamation and submits that Cadia "made a defamatory statement concerning [Joyce's] profession by publishing groundless claims of abuse to various third parties including her co-workers and the Department of State Division of Professional Regulation,"[34] and that Cadia "published defamatory statements in writing to [the] Department of State Division of Professional Regulation."[35]  Next, Joyce claims tortious interference with a prospective economic advantage because she "is now obligated to disclose such claim [of abuse] to any further employer that requests if such claims have been previously alleged against her" and Cadia "plac[ed] [Joyce's] license at risk of suspension or revocation."[36]  Joyce also claims she was wrongfully terminated and that Cadia breached her employment contract because it breached "its obligation to perform such an investigation [and] failed to interview various employees with

---

[31] *Id* at ¶ 10.

[32] MSJ, Ex. O.

[33] Compl.

[34] *Id*. ¶ 49.

[35] *Id*. ¶ 55.

[36] *Id*. ¶¶ 57, 63.

direct knowledge of the allegations."[37]  Finally, Joyce claims Cadia breached the implied covenant of good faith and fair dealing because, despite informing Joyce "that any claim of improper conduct on her behalf would be properly and dutifully investigated, [and] she relied on such representation to accept a position with Cadia."[38]  Cadia has moved for summary judgment.

## LEGAL STANDARD

Under Superior Court Civil Rule 56, summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law."[39] On a motion for summary judgment, the Court "(i) construes the record in the light most favorable to the non-moving party; (ii) detects, but does not decide, genuine issues of material fact; and (iii) denies the motion if a material fact is in dispute."[40] The moving party bears the initial burden of demonstrating that the undisputed facts

---

[37] *Id*. ¶ 71.

[38] *Id*. ¶ 77.

[39] Super. Ct. Civ. R. 56(c).

[40] *US Dominion, Inc. v. Fox News Network, LLC*, 2023 WL 2730567, at *17 (Del. Super. Ct. Mar. 31, 2023) (quoting *CVR Refin., LP v. XL Specialty Ins. Co.*, 2021 WL 5492671, at *8 (Del. Super. Ct. Nov. 23, 2021) (cleaned up)).

support claims or defenses.[41]  If the motion is properly supported, the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution of the ultimate fact-finder.[42]

## ANALYSIS

Cadia argues: (1) it is not a proper party, (2) Joyce's defamation claims fail, (3) Joyce fails to articulate facts supporting tortious interference, (4) Cadia did not breach Joyce's employment contract, and (5) Cadia did not breach the implied covenant of good faith and fair dealing.[43]  Joyce opposes Cadia's motion.  The Court addresses each argument and concludes that Cadia is entitled to judgment as a matter of law.

### 1. *Cadia Healthcare-Silverside and Cadia Healthcare, LLC (together "Cadia") are proper parties.*

Cadia argues that Joyce "brought suit against entities who were not her employer and have no connection with the claims."[44]  Cadia maintains that "[t]he factual record contains no evidence that the named corporate Defendants were

---

[41] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole v. Lowengrub*, 180 A.2d 467 (Del. Super. Ct. 1962)).

[42] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

[43] MSJ.  As previously noted, the parties stipulated to the dismissal of the claim against Mundell.  D.I. 54.

[44] MSJ at 6.

involved in the actions that form the basis of Plaintiff's claims"[45] and cites to Joyce's tax returns from 2017 through 2021 naming "Onix Silverside LLC" as Joyce's employer.[46] Joyce responds that the "Defendants website clearly states the facility is owned by Cadia Rehabilitation Silverside" and that "virtually every document Defendant submitted refers to 'Cadia'—not Onix Silverside."[47]

"The existence of an employer-employee relationship is an issue of law."[48] Delaware Courts look to "who hired the worker, had the power to discharge [her], paid [her] wages, and was in control of the worker's activities while [she] was working."[49] "The greatest weight is given to the issue of control."[50] An application of these factors here favors a finding of an employer-employee relationship.

On November 20, 2017, Joyce agreed to terms of employment with Cadia Rehabilitation-Silverside.[51] Joyce, a physical therapist, served in the rehabilitation division of Cadia Rehabilitation-Silverside. Joyce's September 16, 2021 suspension

---

[45] *Id*. ¶ 26.

[46] *Id*., Ex. B.

[47] Resp. at 6 (D.I. 51 includes neither page numbers nor numbered paragraphs. References here are to the page numbers noted when viewing the document in digital format *via* File&Servexpress which includes the cover page and caption as page 1.)

[48] *Porter v. Pathfinder Services, Inc.,* 683 A.2d 40, 42 (Del. 1996).

[49] *Id*. (citations omitted).

[50] *Id.*

[51] MSJ, Ex. A.

and her September 20, 2021 termination were issued by Cadia Healthcare noting that she worked as a physical therapist in rehabilitation at the Silverside location.[52] And, upon accepting Cadia's offer of employment, Joyce acknowledged that she was bound by the provisions of the Cadia Healthcare employee handbook which documents Cadia's control of Joyce's employment activities.[53] Viewed in the light most favorable to Joyce, the facts show Cadia was Joyce's employer and the Court will assess Joyce's claims against the corporate defendants.

### 2. *Joyce's defamation claims fail.*

Cadia argues that Joyce cannot maintain her claims for libel and slander because Delaware's mandatory reporting statute immunizes reporters,[54] and, in any event, the alleged statements were substantially true.[55] Joyce responds that Cadia Healthcare knew of the statements' falsity and, thus, her claims should proceed to trial.[56]

"As Prosser states, defamation consists of the 'twin torts' of libel and slander;" but "although they may be twins, they are not identical."[57] "[L]ibel is written

---

[52] *Id.*, Exs. F, O.

[53] *Id.*, Exs. C, D.

[54] *Id.* ¶¶ 36-37.

[55] *Id.* ¶ 48.

[56] Resp. at 9.

[57] *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978).

defamation and slander is oral defamation."[58]  "Libel is actionable without special

damages, whether the defamatory nature is apparent on the face of the statement or

only by reference to extrinsic facts."[59]  Slander, on the other hand, requires proof of

special damages;[60] but where slanderous statements "(1) malign one in a trade,

business or profession, (2) impute a crime, (3) imply that one has a loathsome

disease, or (4) impute unchastity to a woman" a claim may survive without proof of

special damages.[61]  Joyce asserts claims of both libel and slander.[62]

To succeed on a claim for defamation, a plaintiff must show that: "(1) the

defendant made a defamatory statement; (2) concerning the plaintiff; (3) the

statement was published; and (4) a third party would understand the character of the

communication as defamatory."[63]  "Ultimately, the plaintiff also must prove

injury."[64]  "A statement is defamatory when it 'tends so to harm the reputation of

another as to lower him in the estimation of the community or deter third persons

---

[58] *Id.*

[59] *Id.* at 971 (cleaned up).

[60] *Id.* at 970.

[61] *Id.*

[62] Compl. ¶¶ 45-58.

[63] *Preston Hollow Capital LLC v. Nuveen LLC*, 2022 WL 2276599, at \*3 (Del. Super. Ct. June 14, 2022) (quoting *Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005)).

[64] *Id.*

10

from associating or dealing with him.'"[65]  Joyce alleges that Cadia slandered her by "publishing groundless claims of abuse to various third parties including her co-workers and the Department of State Division of Professional Regulation,"[66] and engaged in libel when it "made a defamatory statement concerning [Joyce's] profession by accusing her of groundless claims of abuse."[67]

i.    *Cadia is immune from liability.*

Delaware law mandates reporting of allegations of abuse in long-term care facilities.[68]  Title 16, Section 1132(a)(1) provides:

> Any employee of a facility or person who provides services to a patient or resident on a regular or intermittent basis who has reasonable cause to believe that a patient or resident in a facility has been abused, neglected, mistreated, or financially exploited or has been the victim of medication diversion shall immediately report the abuse, neglect, mistreatment, financial exploitation, or medication diversion to the Department by oral communication.  The employee or person providing services to a patient or resident shall file a written report within 48 hours after the employee or person providing services to a patient or resident first gains knowledge of the abuse, neglect, mistreatment, financial exploitation, or medication diversion.[69]

---

[65] *Cousins v. Goodier*, 283 A.3d 1140, 1148 (Del. 2022) (quoting the Restatement of Torts § 559 (1938)).

[66] Compl. ¶ 49.

[67] *Id*. ¶ 56.

[68] 16 *Del. C.* § 1132(a); *Cooper v. Cadia-Pike Creek*, 2021 WL 409156, *2 (Del. Super. Ct. Feb. 4, 2021).

[69] 16 *Del. C.* § 1132(a)(1).

11

Any person who fails to report as required shall "be fined not more than $1,000 or imprisoned not more than 15 days, or both."[70] And, the statute provides a concomitant grant of immunity to any person "in any civil or criminal action by reason of the report where the report was made in good faith or under the reasonable belief that the abuse, neglect, mistreatment, financial exploitation, or medication diversion has occurred."[71]

Similarly, under 24 *Del. C.* § 1930(a), any person who is licensed to practice nursing "has a duty to report to the Division of Professional Regulation in writing information that the licensee reasonably believes indicates that . . . any other health-care provider, has engaged in or is engaging in conduct that would constitute grounds for disciplinary action under this chapter or the other health-care provider's licensing statute."[72] And, 24 *Del. C.* § 1930(d), also provides a reporter immunity from civil and criminal liability for reports made in good faith.[73] Good faith is presumed until proven otherwise by the complainant through a showing of gross or wanton negligence.[74]

---

[70] 16 *Del. C.* § 1132(b).

[71] 16 *Del. C.* § 1135(a).

[72] 24 *Del. C.* § 1930(a).

[73] 24 *Del. C.* § 1930(d).

[74] 24 *Del. C.* § 1930(d)

The purpose of immunity provisions such as these "is to encourage the reporting of . . . abuse and not place an undue chill on the willingness to do so."[75] The statutory duty to report, coupled with the grant of immunity to the reporter may present "conflicting principles of public policy;"[76] the reporting of suspected abuse is balanced against "the right of redress, if any, of persons falsely accused of . . . abuse."[77] Of course, this balance favors reporting.[78]

Cadia reported the alleged abuse of J.L. in accordance with Delaware law. Reasonable cause existed mandating Cadia's report, and no facts evidence anything other than good faith on Cadia's part when the report was made. Cadia relied on statements from Cadia employees and J.L. Joyce alleges Cadia's failure to interview Kelly Moylan, J.L.'s history of false reporting, and J.L's "clear" X-rays evidence Cadia's bad faith.[79] But, these facts do not present a material factual dispute as to Cadia's September 2021 reporting.

Cadia interviewed seven healthcare providers who either spoke with J.L. after the incident or had personal knowledge of the incident.[80] This investigation yielded

---

[75] *See Hedrick v. Quest Diagnostics Clinical Laboratories, Inc.*, 807 A.2d 584, 593 (Del. Super. Ct. 2002).

[76] *Id.* at 585.

[77] *Id.*

[78] *Id.* at 594-95.

[79] Resp. at 11.

[80] *See* MSJ, Exs. G, H, I, J, K, L, M.

13

reasonable cause that a reportable event occurred and, Cadia made a report in good faith as required by Delaware law. Joyce's dissatisfaction with Cadia's investigation does not usurp Cadia's obligation to report suspected abuse. And no evidence has been offered that Cadia knew of J.L.'s tendency to fabricate at the time the report was made.[81] In fact, the record reveals Cadia did not have reason to question J.L.'s credibility until weeks after the September incident.[82]

Cadia possessed reasonable cause to believe J.L had been abused, neglected, or mistreated. Delaware law mandated reporting and provided immunity to the reporting party. This mandate, and the associated immunity, existed regardless of the ultimate outcome of any investigation.[83] For these reasons, summary judgment on Joyce's defamation claims is **GRANTED**.

ii.    <u>*Cadia's statements concerning the investigation was substantially true.*</u>

Cadia advances a separate and independent basis for summary judgment – the truth of the statements it made.[84] "According to Delaware law a publisher is not liable for defamation when the statements attributable to the publisher are

---

[81] Cadia Healthcare terminated Joyce on September 23, 2021. MSJ, Ex. O. Joyce presented no evidence showing that Cadia Healthcare had knowledge of J.L.'s tendency to fabricate interactions with therapists until October 2021. Resp., Ex. 7.

[82] Resp., Ex. 7.

[83] *See Hedrick*, 807 A.2d at 595.

[84] MSJ ¶ 48.

14

determined to be substantially true."[85]  "If the alleged libel was no more damaging to the plaintiff's reputation in the mind of the average [listener] than a truthful statement would have been, then the statement is substantially true."[86]

At an employee presentation, Cadia informed Joyce's co-workers that the company suspended two therapists pending an investigation of patient abuse.[87]  That statement was true.  Joyce's argument that Cadia Healthcare knew that the allegation against her was false based on J.L.'s propensity to fabricate is belied by the facts presented.  The first evidence of Cadia's suspicion of J.L.'s credibility appeared a month *after* Joyce's termination.[88]  Independent of Cadia's statutory immunity, Joyce's defamation claims based on Cadia's employee presentation fail.

### 3. Joyce's tortious interference with contract claim fails.

Cadia Healthcare asserts that "[n]o facts exist of record (nor has Plaintiff even alleged) that a contract existed between her and a prospective employer to which [Cadia] interfered."[89]  Joyce, however, claims tortious interference with a

---

[85] *Ramada Inns, Inc. v. Dow Jones & Co., Inc.*, 543 A.2d 313, 317 (Del. Super. Ct. 1987) (citing *Riley v. Moyed*, 529 A.2d 248 (Del. 1987)); *see Page v. Oath Inc.,* 270 A.3d 833, 843-45 (2022) (discussing evolution of defamation jurisprudence)).

[86] *Ramada Inns, Inc.*, 543 A.2d at 317.

[87] Resp., Ex. 8, ¶ 9.

[88] *See* Resp. Ex. 7.

[89] MSJ ¶ 55.

15

prospective economic advantage,[90] and the Court will assess the claim as alleged.[91]

Joyce contends that Cadia, by reporting the abuse, "understood she could lose her license, have the same suspended and her career destroyed."[92] She propounds: "It will not require a jury to hear her testimony and conclude that [her] future professional opportunities have been damaged beyond repair most likely."[93]

"To state a claim for tortious interference with prospective economic advantage, a plaintiff must plead (1) the existence of a reasonably probable business opportunity, (2) intentional interference by the defendant with that opportunity, (3) proximate causation, and (4) damages."[94] To plead a reasonable probability of a business opportunity, a plaintiff "must identify a specific party who was prepared to enter into a business relationship [with the plaintiff] but was dissuaded from doing

---

[90] Compl. at ¶¶ 59-66.

[91] *International Business Machines Corp. v. Comdisco, Inc.*, 1993 WL 259102, at *21 (Del. Super. Ct. June 30, 1993) (finding "the elements of the tort of interference with prospective advantage are similar to those of the tort of interference with contractual relations, but not identical.") (cleaned up).

[92] Resp. at 10.

[93] *Id.*

[94] *Axogen Corp. v. Integra LifeSciences Corp.*, 2021 WL 5903306, at *3 (Del. Super. Ct. Dec. 13, 2021) (citing *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122-23 (Del. Ch. June 5, 2017)); *see DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981) (quoting the trial court's accurate delineation of the elements of this cause of action).

so by the defendant and cannot rely on generalized allegations of harm."[95] "To be reasonably probable, a business opportunity must be something more than a mere hope of the innate optimism of the salesman or a mere perception of a prospective business relationship."[96] "Accordingly, the Court cannot grant summary judgment to Defendants unless undisputed facts show, at the time of Defendants' alleged interference, Plaintiff[ ] had nothing more than a speculative deal . . . that had no reasonable probability of materializing."[97] "To meet the intentional interference element, 'a plaintiff must prove that the defendant's interference with the plaintiff's business opportunity was intentional and wrongful or improper.'"[98] "[A]n alleged interference in a prospective business relationship is only actionable if it is *wrongful or improper*."[99]

---

[95] *Orthopaedic Associates of Southern Delaware, P.A. v. Pfaff*, 2018 WL 822020, at *2 (Del. Super. Ct. Feb. 9, 2018) (quoting *U.S. Bank National Association v. Gunn*, 23 F.Supp.3d 426 (D. Del. 2014)).

[96] *Aureus Holdings, LLC v. Kubient, Inc*., 2021 WL 3465050, at *5 (Del. Super. Ct. Aug. 6, 2021).

[97] *KT4 Partners LLC v. Palantir Technologies Inc*., 2021 WL 2823567, at *20 (Del. Super. Ct. June 24, 2021).

[98] *Carney v. B&B Service Co*., 2021 WL 1250474, at *2 (Del. Super. Ct. Apr. 5, 2021) (quoting *Orthopaedic Assocs.*, at *2).

[99] *World Energy Ventures, LLC v. Northwind Gulf Coast LLC*, 2015 WL 6772638, at *8 (Del. Super. Ct. 2015 WL 6772638) (cleaned up) (emphasis in original) (quoting *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *8 (Del. Ch. Jan. 20, 2009)).

Joyce interviewed with Penn Medicine and, after informing them of the complaint against her, her second interview was cancelled without further explanation.[100] Joyce describes a similar experience with Temple.[101] There is no record evidence that Penn Medicine or Temple chose not to hire Joyce due to an interference by Cadia Healthcare.[102] Construing the record in the light most favorable to Joyce, it is reasonable to conclude that, learning of this report, an employer may be disinclined to pursue Joyce as an employee. But it is clear that any action taken by Cadia was not motivated by a wrongful or improper desire to thwart Joyce's business prospects. To the contrary, Cadia was legally obligated to report suspected abuse.

Cadia's statutory immunity from civil liability stemming from its reporting of Joyce applies with equal force here. Under 16 *Del. C.* § 1132(a)(1) and 24 *Del. C.* § 1930(a), Cadia had a duty to report the suspected abuse of J.L.[103] This statutory mandate did not afford Cadia discretion to consider the impact of its reporting on Joyce. To the contrary, the Delaware General Assembly has made policy

---

[100] Resp. Ex. 9 ("Joyce Dep. Testimony Resp.") at 90:1-2, 13-20.

[101] *Id*. at 90:21-23.

[102] *Id*. at 90:14-23.

[103] 16 *Del. C.* § 1132(a)(1); 24 *Del. C.* § 1930(a); *Cadia Pike Creek*, 2021 WL 409156, at *2.

determinations favoring reporting of suspected abuse.[104]  And, of course, Cadia's

report did not prevent Joyce from obtaining future employment; Joyce testified that

she began working with Bayada in November 2021.[105]

There is no dispute of material fact that Cadia fulfilled its statutory mandate

and acted in good faith when it reported Joyce's conduct.  Summary judgment on

Joyce's tortious interference claim is **GRANTED**.

### 4. *Joyce, as an at-will employee, cannot maintain her claim for "wrongful termination - breach of contract."*

Cadia contends Joyce, an "at-will" employee, could be terminated "at any

time, with or without cause."[106]  Joyce responds that no reasonable cause existed to

terminate her employment.[107]  Joyce highlights Cadia's failure to rebut her expert's

opinion that she did not breach the duty of care,[108] Cadia's failure to consider the

statement of Kelly Moylan, J.L.'s history of false reporting, and the absence of injury

in J.L.'s X-rays.[109]  Joyce adds that Cadia made an oral promise to her to dutifully

---

[104] *Hedrick*, 807 A.2d at 595.

[105] Joyce Dep. Testimony Resp. at 89:8-10.

[106] MSJ ¶¶ 69, Ex. C at 7.

[107] Resp. at 8.

[108] *Id*. at 9.

[109] *Id*. at 9.

investigate any claim of improper conduct on her behalf and, thus, this should be considered a term of her contract.[110]

"To prevail on a breach-of-contract claim, one must show: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages."[111] Priortiy is given to the parties' intentions as contained within the four corners of the contract.[112] "Delaware law holds that the parol evidence rule bars the admission of preliminary negotiations, conversations, and verbal agreements when the parties['] written contract represents the entire contract between the parties."[113] "If a written contract represents the entire agreement of the parties it is said to be 'integrated.'"[114] The parol evidence rule prevents the consideration of oral evidence that would contradict either total or partial integrated agreements.[115]

---

[110] Compl. ¶ 77.

[111] *Jiggy Puzzles, LLC v. Steelhead Acquisition EE, Inc.*, 2026 WL 465112, at *5 (Del. Super. Ct. Feb. 18, 2026) (citing *VLIW Tech., LLC v. Hewlett-Packard, Co.*, 840 A.2d 606, 612 (Del. 2003)).

[112] *Id.* (citing *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009)).

[113] *Straine DM Holdings LLC v. Breault,* 2025 WL 275408, at *7 (Del. Super. Ct. Jan. 22, 2025) (quoting *Trifecta Multimedia Hldgs. Inc. v. WCG Clinical Servs. LLC,* 318 A.3d 450 (Del. Ch. 2024) (internal citations omitted).

[114] *Id.* (quoting *Carlson v. Hallinan*, 925 A.2d 506, 522 (Del. Ch. 2006)).

[115] *Torrey Pines Bank v. Byrnes*, 2013 WL 1187538, at *2 (Del. Super. Ct. Mar. 4, 2013) (citing *Taylor v. Jones*, 2002 WL 31926612, at *3 (Del. Ch. Dec. 17, 2002)).

Joyce's contract expressly identifies her as an "at will" employee,[116] and Joyce agreed to the terms of employment.[117] As an at-will employee, Cadia Healthcare could terminate Joyce at any time for any reason.[118] Neither Joyce's contract, nor Delaware law, required Cadia to investigate allegations of wrongful conduct.

Joyce asserts that, before she accepted Cadia's offer of employment, Cadia promised her "that any claim of improper conduct on her behalf would be properly and dutifully investigated."[119] But, that oral promise does not appear in the contract and, thus, contradicts the at-will nature of the contract. Because the oral agreement contradicts the written agreement, the parol evidence rule prevents consideration of the oral agreement. Where, as here, the parties' complete agreement is reflected within an integrated employment contract, the Court will not look beyond the four corners of the agreement to inject conflicting terms. Cadia was entitled to terminate Joyce with or without good cause. And it was not required to investigate before

---

[116] MSJ, Ex. A at 1, 4.

[117] *Id.* at 5.

[118] *Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 103 (Del. 1992); *Workman v. Astronaut Topco*, L.P., 2025 WL 2506027, at *8 (Del. Super. Ct. Sept. 2, 2025) (citing *Grimaldi v. New Castle Cnty.*, 2016 WL 4411329, at *3 (Del. Super. Ct. Aug. 18, 2016) (citations omitted)); *Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 585 (Del. Ch. 1994) (at will contracts "may be terminated by either party without demonstrating to anyone's satisfaction that the reasons for doing so are valid, reasonable or appropriate").

[119] Compl. ¶ 68.

21

terminating her. In any event, Cadia did investigate the claim before terminating Joyce. On the record before the Court, there is no evidence Cadia breached any term of Joyce's employment contract; Cadia's motion for summary judgment on Joyce's breach of contract claim is **GRANTED**.

**5. *Joyce's claim of breach of the Implied Covenant of Good Faith and Fair Dealing fails.***

Joyce asserts that Cadia represented "any claim of improper conduct on her behalf would be properly and dutifully investigated," and that "[s]he relied on such representation to accept a position with Cadia."[120] Cadia argues that Joyce was an at-will employee and, nonetheless, Cadia investigated the allegations before terminating her employment.[121] Joyce responds that Cadia breached the good faith and fair dealing implicit in her contract when they terminated her knowing J.L. "had a terrible record of fabricating claims . . . [t]hey had no physical evidence of abuse, and the only parties with direct access to the room-Plaintiff and her 2 co-workers heard nothing amiss."[122]

Exceptions to the employment at-will doctrine are "narrow and discrete."[123] "[E]very employment contract made under the laws of this State, consonant with

---

[120] Compl. ¶ 77.

[121] MSJ ¶ 81-82.

[122] Resp. at 11.

[123] *Lord v. Souder*, 748 A.2d 393, 403 (Del. 2000).

general principles of contract law, includes an implied covenant of good faith and fair dealing."[124]  This implied covenant is breached when the conduct of the employer constitutes "an aspect of fraud, deceit or misrepresentation."[125]  The implied covenant of good faith and fair dealing operates as an exception to the at-will employment doctrine:

> (1) where the termination violated public policy; (2) where the employer misrepresented an important fact and the employee relied thereon either to accept a new position or remain in a present one; (3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to employee's past service; and (4) where the employer falsified or manipulated employment records to create fictious grounds for termination.[126]

On the record before the Court, none of the exceptions exist.

i.  *Joyce's termination did not violate public policy.*

"The public policy exception . . . generally requires a clear mandate of public policy."[127]  To invoke this exception, a plaintiff "must assert a public interest recognized by some legislative, administrative or judicial authority, and the employee must occupy a position with responsibility for that particular interest."[128]

---

[124] *Merrill*, 606 A.2d at 101; *Rizzitiello v. McDonald's Corp.*, 868 A.2d 825, 830 (Del. 2005).

[125] *Rizzitiello*, 868 A.2d at 830 (internal quotations omitted).

[126] *Lord*, 748 A.2d at 400 (cleaned up) (citing *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 442-44 (Del. 1996).

[127] *Pressman*, 679 A.2d at 441.

[128] *Id.* at 441-42 (quoting Shearin, 652 A.2d at 587-89).

23

Here, Joyce does not "identify an explicit and recognizable public policy."[129] Cadia learned of a patient complaint and responded to the complaint as required by law. The public policy exception does not apply.

ii.    *Cadia Healthcare did not misrepresent a material fact of Joyce's employment.*

Cadia had no obligation to investigate allegations before terminating Joyce. And, as noted above, the Court will not inject a contradictory oral agreement into her at-will contract.[130] The terms and conditions of her employment were clearly set forth in the November 20, 2017, agreement. There is no evidence Cadia misrepresented any material fact.

iii.    *Cadia Healthcare did not deprive Joyce of past compensation.*

The Court need not consider this exception because Joyce does not claim Cadia failed to compensate her.

iv.    *Cadia did not falsify any allegations against Joyce.*

Cadia was justified in terminating Joyce without cause.[131] But Cadia gathered facts about Joyce's encounter with J.L. before invoking this privilege. Cadia did not falsify any allegations; in fact, several witnesses described the incident between

---

[129] *Id.* at 442.

[130] *See supra* pp. 19-21.

[131] *Workman*, 2025 WL 2506027, at *8 (citing *Grimaldi*, 2016 WL 4411329, at *3 (citations omitted))).

24

Joyce and J.L.[132]  Joyce offered no evidence that J.L. fabricated the allegation or that Cadia Healthcare knew of this fabrication.  Rather, Cadia's suspicion of the accuracy of J.L.'s reporting did not crystallize until weeks after Joyce's termination.[133]

Joyce merely states that her "claim falls under the concept of good faith and fair dealing,"[134] but fails to explain what exception to her at-will contract applies to inject this concept.  And, importantly, no record evidence supports this claim.  Cadia's motion for summary judgment on Joyce's breach of the implied covenant claim is **GRANTED**.

## CONCLUSION

The Court has thoroughly considered the parties pleadings, exhibits, arguments, and the record in this case.  To the extent the record conflicts on the propriety of Joyce's treatment of J.L., this is not a medical negligence case.  Joyce contends Cadia's actions either defamed her or constituted an express or implied breach of her contract.  These claims fail.  To the extent that there is any tension between Cadia's reporting, the immunity associated with such reporting, and Joyce's assertion that no abuse occurred, Delaware law resolves that tension in favor of reporting.  And, because Joyce was an at-will employee, Cadia was not obligated to

---

[132] *See* MSJ, Exs. G, H, I, J, K, L, M.

[133] Resp., Ex. 7.

[134] *Id*. at 11.

25

articulate a basis for her termination.  For the reasons set forth herein Cadia's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

_____
Sean P. Lugg, Judge
